Adianis MORALES, et al., Plaintiffs,

v.

NATIONWIDE INSURANCE COMPANY Defendant.

No. CIV.01–1815 PG.

United States District Court, D. Puerto Rico.

Dec. 10, 2002.

As Amended Jan. 27, 2002.

148

Jorge L. Arroyo-Alejandro, San Juan, PR, for Plaintiffs.

Roberto Feliberti, Arturo Diaz-Angueira, Cancio, Nadal, Rivera & Diaz, San Juan, PR, for Defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Defendant Nationwide Insurance Company filed a motion titled "Constitutional Challenge to the Presumption of Discrimination Contained in Section 148 of Puerto Rico's Law 100 (Local Employment Discrimination Statute)."[1] (Def.'s Const.

---

**1.** Defendant advanced three due process grounds for the unconstitutionality of section 148 of Law 100. The Court only considers the first ground: No nexus between the basic fact and the presumed one. The Court notes, however, that the second ground, that section 148 violates the right to fair trial because of the potential of jury confusion, has been con-

Challenge. Docket No. 14). Plaintiffs filed their Opposition on July 29, 2002. (Pls.' Opp'n Const. Challenge, Docket No. 22) (hereinafter "Pls.' Opp'n"). The Government of Puerto Rico filed a "Special Appearance in Opposition to the Constitutional Challenge to Law 100 Filed by Defendant Nationwide Mutual Insurance Company" on August 12, 2002. (P.R. Govt.'s Opp'n Const. Challenge, Docket No. 26) (hereinafter "Govt.'s Opp'n"). Defendant then filed its "Consolidated Reply to Plaintiff's and the Commonwealth of Puerto Rico Oppositions to Nationwide's Challenge to the Constitutionality of the Law 100 Presumption." (Def.'s Reply to Pls.' & P.R. Govt.'s Opp'n, Docket No. 28) (hereinafter "Def.'s Reply"). The Court is now ready to consider these motions, and **GRANTS** Defendant's Motion.

### BACKGROUND

Plaintiffs Adianis Morales Gerena, José H. Robles Levy, and the conjugal partnership between them, filed an action against Nationwide Insurance Company alleging sexual discrimination, pregnancy discrimination, and wrongful discharge. (Pls.' Compl., Docket No. 1). The action was brought under several federal and state statutes, including Title VII of the Civil Rights Act of 1964, 42. U.S.C. §§ 2000e to 2000e–17; Puerto Rico Law No. 115 of December 20, 1991, 29 P.R. Laws Ann. §§ 194–194b; Puerto Rico Law No. 100 of June 30, 1959, 29 P.R. Laws Ann. §§ 146–151; and Puerto Rico Law No. 80 of May 30, 1976, 29 P.R. Laws Ann. §§ 185a–185m (hereinafter "Law 80"). (Pls.' Compl. at 2).

Defendant filed a motion for challenging the constitutionality under the Due Process clause of Law 100's presumption of employer discrimination. (Def.'s Const. Challenge at 10.) The alleged due process violations lie in the burden-shifting framework established by the Puerto Rico Supreme Court. First, Defendant claims that in suits under both Law 100 and Law 80 there is no rational connection between the facts proven to activate the presumption and the facts presumed. (Def.'s Const. Challenge at 12–13). All that employees must do is prove a "basic fact" of discrimination—such as that the employee was a woman, or that she was actually fired—and allege unjustified dismissal to trigger the presumption. (Def.'s Const. Challenge at 12–13). Defendant claims, however, that in an at-will employment jurisdiction like Puerto Rico, there cannot be a rational connection between an allegation of unjustified dismissal and a presumption of discrimination. (Def.'s Const. Challenge at 12–13). Moreover, proving a basic fact such as gender or actual dismissal "would still be insufficient, constitutionally speaking, to create the necessary rational relationship," since "*all* employees in Puerto Rico necessarily belong to one or more of the classes protected by Law 100." (Def.'s Reply at 9 n. 12, 9–10).

sidered and disposed by the First Circuit and this Court. *See Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 609 (1st Cir.1985), *disapproved of on other grounds in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *see also Cuello-Suárez v. Autoridad de Energía Electrica de P.R.*, 737 F.Supp. 1243, 1252 (D.P.R.1990). The third ground, that Law 100 is preempted by Title VII, likewise has been disposed. *See Alexander v.*

*Gardner–Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ("[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was intended to supplement, rather than supplant, existing laws and institutions regarding employment.").

Second, Defendant contends that the due process concerns are heightened by the nature of the burden that shifts. (Def.'s Reply at 10). Contrary to claims under federal anti-discrimination statutes, the presumption in section 148 of Law 100 shifts the entire burden of proof. (Def.'s Reply at 10). Law 100, then, is similar to the statutory presumptions declared unconstitutional by the Supreme Court in *W. & Atl. R.R. v. Henderson*, 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884 (1929), since both are given the effect of evidence "that is to prevail unless the employer can prove a negative, by a preponderance of the evidence, i.e., that its reasons for the termination of the employees was nondiscriminatory." (Def.'s Reply at 13).

Plaintiffs respond that Nationwide's due process concerns are "flawed and unfounded." (Pls.' Opp'n at 6). All that due process requires is "that the presumption not be arbitrary." (Pls.' Opp'n at 6). Thus, a presumption will be valid where the inference has a "reasonable connection to the circumstances of life as we know them." (Pls.' Opp'n at 6) (citing *Tot v. United States*, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943)). Plaintiffs argue that the rational connection in Law 100 "is predicated on decades of experience in the labor and civil rights arenas and in the traditional absence of a balance of power between the employers and employees." (Pls.' Opp'n at 6). The legislature, they claim, took into account "circumstances of life and common experience" when it established the statutory presumption of Law 100. (Pls.' Opp'n at 7).

In its "Special Appearance," the Government of Puerto Rico defended the constitutionality of Law 100. (Govt.'s Opp'n at 2). It stressed that the Puerto Rico Supreme Court has upheld the validity of the presumption of discrimination in Law 100 because it "obligated the plaintiff to present

sufficient evidence so that 'in general terms, the trier of fact have [sic] a rational basis and motive to infer that the employment action was undertaken by discriminatory reasons.'" (Govt.'s Opp'n at 5) (citing *Díaz Fontánez v. Wyndham Hotel Corp.*, 2001 WL 1346759, at *12 (P.R.)). This reasoning, according to the Government, "is consistent with the 'rational relation' doctrine established by the federal courts, including the U.S. Supreme Court." (Govt.'s Opp'n at 5). Moreover, the Government argues that the statute is constitutional because Puerto Rico's legislature "could have believed that Law 100 ... would further its legitimate interest in vindicating the rights of employees subject to employment discrimination." (Govt.'s Opp'n at 7–8).

## DISCUSSION

Before entering into the merits of the Motion, the Court will examine the relevant provisions of Puerto Rico Law 100, its burden-shifting presumption, and its correlation with Law 80.

### Puerto Rico's Law 100

discharges, lays off, or discriminates against an employee regarding his/her salary, wage pay or remuneration, terms, rank, conditions, or privileges of his/her job, or who fails or refuses to hire or rehire a person, or who limits or classifies his/her employees in any manner which tends to deprive a person of employment opportunities, or to affect his/her status as employee because of his/her age ... race, color, sex, social or national origin, social condition, political affiliation or political or religious ideology.

Law Number 100 of June 30, 1959, 29 P.R. Laws Ann. §§ 146–151 (1998) (hereinafter "Law 100"), bans employment discrimination on the basis of sex, color, race,

origin, political or religious beliefs, social condition or political affiliation. The Act, which was enacted before Title VII and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621–634, imposes civil liability to any employer that 29 P.R. Laws Ann. § 146. The Puerto Rico legislature enacted this statute in light of the accelerated industrial development that Puerto Rico experienced in the late 1940's and 1950's, and in anticipation of the ensuing changes in the labor market. *See* 1959 P.R. Laws 100. The Puerto Rico Supreme Court has urged courts to consider the myriad social and economic values underlying Puerto Rico's labor laws when interpreting this statute. *Díaz Fontánez v. Wyndham Hotel Corp.*, 2001 WL 1346759, at *9 (P.R.).

Law 100 also includes the following presumption of employer liability: "Any of the acts mentioned in the preceding sections shall be presumed to have been committed in violation of section 146–151 of this title, whenever the same shall have been performed without good cause. This presumption shall be of a controvertible character." 29 P.R. Laws Ann. § 148. The presumption was enacted to ease the employee's initial burden of proof when claiming discrimination. *Díaz Fontánez*, 2001 WL 1346759, at *9; *Sandoval v. Caribe Hilton Int'l*, 1999 P.R. Sup. LEXIS 172, at *27 (Naveira de Rodón, J., concurring).[2] It is interpreted in light of Puerto Rico Rule of Evidence 14, which provides:

> In a civil action, a presumption imposes on the party against whom it is directed the burden of proving the nonexistence of the presumed fact. If the party against whom the presumption is estab-

lished fails to offer evidence showing the nonexistence of the presumed fact, the trier shall accept the existence of said fact. If evidence is introduced in support of a determination as to the nonexistence of said fact, the party wishing to rebut the presumption shall persuade the trier that nonexistence of the presumed fact is more likely than its existence.

P.R. R. Evid. 14; *see also Ibáñez v. Molinos de P.R.*, 14 P.R. Offic. Trans. 61, 70 (1983) ("To determine the effect of a presumption it is necessary to go to the 1979 Rules of Evidence."). Law 100's presumption, then, shifts to the defendant the burden of proof, which entails a shift in both the burden of production and persuasion. *Alvarez–Fonseca v. Pespi Cola of P.R.*, 152 F.3d 17, 27 (1st Cir.1998); *Ibáñez*, 14 P.R. Offic. Trans. at 70; *see also id.* at 66 ("Usually, the plaintiff has the burden of proof to prove his case. This implies the burden of *producing* the evidence and *persuading* the trier.").

 This shift in the burden of proof has important evidentiary and procedural consequences. Under Puerto Rico law, as elsewhere in the United States, the plaintiff in a civil suit has the burden to prove his or her case. *See Díaz Fontánez*, 2001 WL 1346759, at *10; *Ibáñez*, 14 P.R. Offic. Trans. at 66. Under Law 100, the employee retains this initial evidentiary burden, *Hernández v. Trans Oceanic Life Ins. Co.*, 2000 WL 943869 (P.R.), at *10, and must establish three factors: (1) that he or she was fired; (2) that the dismissal was unjustified (lack of good cause); and (3) some basic fact substantiating the type of discrimination alleged. *Díaz Fontánez*, 2001

---

**2.** "We note that *Sandoval* constitutes a 'judgment,' rather than an opinion of the Puerto Rico Supreme Court, and therefore carries no precedential value beyond the 'intrinsic persuasive value of its rationale.'" *Baralt v.* *Nationwide Mut. Ins. Co.*, 251 F.3d 10, 20 n. 12 (1st Cir.2001) (quoting *Clemente v. Carnicon–P.R. Mgmt. Assocs.*, 52 F.3d 383, 389 n. 6 (1st Cir.1995)).

WL 1346759, at *9; *Hernández*, 2000 WL 943869, at *10. The statutory presumption against the employer is activated, and the burden of proof shifts, once the employee establishes these three factors. *Díaz Fontánez*, 2001 WL 1346759, at *9, *12; *Hernández*, 2000 WL 943869, at *10. At that point, the employer must prove, by the preponderance of the evidence, that the dismissal "was not motivated by discriminatory animus." *Alvarez–Fonseca*, 152 F.3d at 28; *accord Díaz Fontánez*, 2001 WL 1346759, at *11. The employer can make this showing and rebut the presumption by proving that "the existence of discrimination was less probable than its existence." *Ibáñez*, 14 P.R. Offic. Trans. at 75–76. Thus, it is not necessary to "articulate a reasonable explanation for the discharge." *Id.* If the employer rebuts the presumption by the preponderance of the evidence, the employee has the burden of proving the existence of discrimination, "this time without the benefit or help of said presumption." *Díaz Fontánez*, 2001 WL 1346759, at *13 (translation ours).

### Correlation Between Puerto Rico Law 100 and Law 80

■ This burden-shifting framework changes when a suit is brought under both Law 100 and Law 80. Law 80 provides indemnity to any employee who is discharged from his or her employment without good cause.[3] 29 P.R. Laws Ann. § 185a. The statute mentions five instances that would constitute good cause, *id.* § 185b, but these are not the only grounds for a good cause discharge. *See Báez*

*Garcia v. Cooper Labs. Inc.*, 20 P.R. Offic. Trans. 155, 161 n. 5 (1987). Generally, justified dismissals are those linked to the ordinary conduct of business. *Díaz Fontánez*, 2001 WL 1346759, at *6.

■ Like Law 100, Law 80 establishes a presumption against employers. *See Díaz Fontánez*, 2001 WL 1346759, at *7; *Belk v. Martínez*, 146 P.R. Dec. 215, 230–31 (1998). An employee's initial burden is to allege unjustified dismissal and prove actual dismissal. *Alvarez–Fonseca*, 152 F.3d at 28. Upon this allegation, the burden of proof shifts to the employer, who must establish—by the preponderance of the evidence—that the discharge was justified. *Alvarez–Fonseca*, 152 F.3d at 28; *Belk*, 146 P.R. Dec. at 231.

Because plaintiffs-employees frequently bring suits arising under both Law 80 and Law 100, the Supreme Court of Puerto Rico had to clarify the procedural and evidentiary nuances of an action under both statutes. Initially, courts understood the burden-shifting framework in joint Law 100 and Law 80 claims as follows:

> [T]he Law 80 presumption is triggered when the plaintiff alleges unjustified dismissal and proves by a preponderance of the evidence that he was actually or constructively discharged. The burden then shifts to the employer to prove by a preponderance of the evidence that it had just cause to dismiss the employee. If the employer fails to make this showing, the Law 100 presumption of discrimination is triggered, shifting the

---

**3.** Despite this indemnity, Law 80 does not prohibit unjustified dismissals, as long as they are not discriminatory. *See Díaz Fontánez*, 2001 WL 1346759, at *6; *see also* Miguel A. Velazquez Rivera & Jorge Velazquez Hernández, *Curso Sobre Derecho Laboral* 8 (2002). The statute recognizes every employer's right to dismiss employees, "limit[ing] itself to providing employees with financial assistance."

*Díaz Fontánez*, 2001 WL 1346759, at *6 (citing Luis H. Sánchez Caso, *Reflexiones sobre la Responsabilidad Civil de los Oficiales y Gerenciales en Reclamaciones de Despido o Discrimen*, 34 Rev. Jur. U.I.P.R. 183, 210–11 (2000)) (translation ours). This indemnity is imposed on employers "to dissuade them from exercising their prerogative when justified." *Id.*

burden to the employer of proving by a preponderance of the evidence that the otherwise-unjustified dismissal was not motivated by discriminatory animus. *Alvarez–Fonseca,* 152 F.3d at 28. In *Díaz Fontánez,* however, the Puerto Rico Supreme Court provided a different interpretation of the burden-shifting framework. 2001 WL 1346759, at *11. In these cases, Law 100's presumption of liability is activated once the employee *alleges* unjustified dismissal and proves "certain basic facts of his or her discrimination claim." *Id.* at *12. The court has repeatedly stated that proving these "certain basic facts" does not mean proving the four elements of the McDonnell Douglas prima facie case.[4] *Id.; Hernández,* 2000 WL 943869, at *10 n. 12; *Sandoval,* 1999 P.R. Sup. LEXIS 172, at *25–26 (Naveira de Rodón, J., concurring). Any of the four elements of the McDonnell Douglas test suffices as a "basic fact" under Law 100. *See Díaz Fontánez,* 2001 WL 1346759, at *12 ("In claims for discriminatory dismissal due to age the plaintiff has the burden of presenting evidence that tends to establish, for example, that i) he belongs to protected class, that is, his age; or ii) that he was qualified for the position he occupied; or iii) that he was fired; or iv) that he was replaced by a younger person …") (translation ours) (emphasis added). Thus, in *Hernández,* an age discrimination suit, proof of the employee's age—over 60 years-old—and an allegation of unjustified dismissal sufficed to activate Law 100's presumption and shift the burden of proof. 2000 WL 943869, at *11. A presumption of liability, and the entire burden of proof, shifts to the defendant based on a simple allegation and proof of just one element—any one— of the McDonnell Douglas prima facie case.

## Power of Federal Courts to Examine Constitutionality of State Statutes.

Before examining the relevant jurisprudence, a word about the power and propriety of having federal courts examine the constitutionality of state statutes. From the early days of the Union, it has been clearly established that federal courts have the power to review the constitutionality of state laws, as interpreted by state tribunals. *See, e.g., Martin v. Hunter's Lessee,* 1 Wheat. 304, 14 U.S. 304, 344, 4 L.Ed. 97 (1816) ("The courts of the United States can, without question, revise the proceedings of the executive and legislative authorities of the states, and if they are found to be contrary to the constitu-

---

**4.** The McDonnell Douglas framework was developed by the United States Supreme Court in Title VII claims for plaintiffs that could not produce direct evidence of discrimination. *See McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972). Under this framework, the plaintiff must first establish a four-part prima facie case. *See Reeves v, Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Jones v. Jones Bros. Constr. Co.,* 879 F.2d 295, 299 (7th Cir.1989) ("A discharged plaintiff can ordinarily establish the *prima facie* case by showing: (1) she was a member of a protected class; (2) she was satisfactorily performing the duties of her position; (3) she was discharged; and (4) her employer sought a replacement for her. These elements may be adjusted to fit differing factual situations."). If the plaintiff establishes the prima facie case, the defendant then has the burden of producing evidence of a nondiscriminatory reason for the actions. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097. This burden is one of production, not of persuasion. *Id.* If the defendant fulfills this burden, plaintiff retains the ultimate burden of establishing, by the preponderance of the evidence, that the reasons offered by the defendant are a mere pretext. *Id.* at 143, 120 S.Ct. 2097. The burden of persuasion *never* shifts to the defendant-employer. *Id.* at 142–43, 120 S.Ct. 2097. This framework was later applied and adapted to claims under the ADEA. *See Domínguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 429 n. 3 (1st Cir.2000).

tion, may declare them to be of no legal validity. Surely the exercise of the same right over judicial tribunals is not a higher or more dangerous act of sovereign power."). This power arises under the Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI. *See, e.g., Eubanks v. Wilkinson,* 937 F.2d 1118, 1122 (6th Cir. 1991). In exercising this power, however, federal courts must be deferential to state courts' interpretations of state law. *Sancho v. Texas Co.,* 308 U.S. 463, 471, 60 S.Ct. 349, 84 L.Ed. 401 (1940). When reviewing the constitutionality of a state statute, federal courts may "only consider the statute's plain meaning and authoritative state court constructions of the statute." *Cotton States Mutual Ins. v. Anderson,* 749 F.2d 663, 667 (11th Cir. 1984). This deference to state courts' interpretations of their own laws has been specifically applied to Puerto Rico. *See Sancho,* 308 U.S. at 470–71, 60 S.Ct. 349; *Corporación Insular de Seguros v. García,* 680 F.Supp. 476, 482 (D.P.R.1988).

In the case at hand, the Court is not reinterpreting Puerto Rico law or questioning the wisdom or efficacy of Puerto Rico statutes. The Court's task, consistent with the Supremacy Clause and the judicial power of the federal courts, is to determine whether Puerto Rico Law 100 conforms to the due process requirements of the United State Constitution. The Court approaches this task relying on, and acting with respect and deference towards, the interpretations of the Puerto Rico Supreme Court. This deference, however, does not diminish this Court's duty to administer federal constitutional law and rule on constitutional questions properly presented before it.

▌ In addition, the doctrine calling for abstention of the federal courts when reviewing unsettled questions of state law is inapplicable here. *See generally R.R.*

*Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (remanding the case to the district and directing it to stay the proceedings until the state court had an opportunity to resolve uncertainties in state law). The workings of the burden-shifting framework of Law 100 is not "uncertain" or an "unresolved question of state law." *Cf. Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) ("[T]he abstention rule only applies where the 'issue of state law is uncertain.' Thus, our abstention cases have dealt with unresolved questions of state law which only a state tribunal could authoritatively construe."); *Ford Motor Co. v. Meredith Motor Co.,* 257 F.3d 67, 71–72 (1st Cir.2001) (holding that *Pullman* abstention is appropriate when there is substantial uncertainty over the interpretation of the state law or a clarification would "obviate the need for a constitutional ruling"). The Puerto Rico Supreme Court has interpreted Law 100 numerous times. *See, e.g., Díaz Fontánez v. Wyndham Hotel Corp.,* 2001 WL 1346759 (P.R.); *Hernández v. Trans Oceanic Life Ins. Co.,* 2000 WL 943869 (P.R.); *Sandoval v. Caribe Hilton Int'l,* 1999 P.R. Sup. LEXIS 172; *Belk v. Martínez,* 146 D.P.R. 215 (1998); *Soto v. Caribe Hilton,* 137 D.P.R. 294 (1994); *Ibáñez v. Molinos de P.R.,* 14 P.R. Offic. Trans. 61 (1982). It has specifically explained the details of the burden-shifting presumption and its difference from the McDonnell Douglas test. *See Díaz Fontánez,* 2001 WL 1346759 (P.R.); *Hernández,* 2000 WL 943869 (P.R.). And any doubts or confusion as to correlation between Law 100's presumption and that of Law 80 were put to rest—clearly and unambiguously—in *Díaz Fontánez,* 2001 WL 1346759 (P.R.). This abundance of clear case law by the Puerto Rico Supreme Court allows this Court to examine Law 100's constitutionality unfettered by the abstention doctrines.

*Cf. Rivera–Puig,* 983 F.2d at 322 ("[A]bstention in a case where state law questions are unambiguous is impermissible because it 'would convert abstention from an exception into a general rule.'") (citations omitted).

### Application of the Due Process Clause to Statutory Presumptions

Presumptions have been called "the slipperiest member of the family of legal terms." 2 John W. Strong, *McCormick on Evidence* § 342, at 433 (5th ed.1999). They are a "legal fiction that allows the finder of facts to determine the 'existence of one fact (the presumed fact), for which there may be no direct evidence, upon presentation of proof of other facts (the basic facts).'" Joel S. Hjelmaas, *Stepping Back from the Thicket: A Proposal for the Treatment of Rebuttable Presumptions and Inferences,* 42 Drake L.Rev. 427, 430–31 (1993). Their cornerstone usually is probability: "A rebuttable presumption will avoid wasted time and effort when the presumed fact is strongly based on logic and common sense." *Id.* at 434–35. But they also serve "to avoid procedural impasses," further "socially desirable policies," *id.,* and correct imbalances "resulting from one party's superior access to the proof," Strong, *supra,* § 343 at 437–38.

There are two major types of presumptions. Under the "bursting bubble" theory associated with Professor Thayer, the presumption shifts the burden of production, but not the burden of persuasion, to the defendant. *See* Strong, *supra,* § 344, at 445–46. Presumptions associated with Professor Morgan, on the other hand, shift the entire burden of proof. These presumptions are frequently referred to as "strong" presumptions, since the task of persuading the trier of fact is more demanding than that of producing evidence to rebut a presumption. *See* Hjelmaas,

*supra,* at 437–38; *see also Ibáñez,* 14 P.R. Offic. Trans. at 72 (explaining that the Puerto Rico Rules of Evidence adopted the "strong" presumption model).

Their usefulness and popularity notwithstanding, presumptions are valid only if they comply with due process requirements. Legislatures certainly have the power to enact statutes "providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue ...." *Mobile, Jackson, and Kansas City R.R. v. Turnipseed,* 219 U.S. 35, 42, 31 S.Ct. 136, 55 L.Ed. 78 (1910). To comply with due process, however, there must be a "rational connection" between the facts proven and the facts that the statute allows to presume. *See, e.g., Atl. Coast Line v. Ford,* 287 U.S. 502, 53 S.Ct. 249, 77 L.Ed. 457 (1933); *W. & Atl. R.R. v. Henderson,* 279 U.S. 639, 49 S.Ct. 445, 73 L.Ed. 884 (1929); *Turnipseed,* 219 U.S. at 43, 31 S.Ct. 136. In *Turnispeed,* where the rational connection test was first expounded, the Court explained that "the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate." *Turnipseed,* 219 U.S. at 43, 31 S.Ct. 136. In that case, the law in question was a Mississippi statute providing that in all actions for damages against railroad companies "proof of injury inflicted by the running of the locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care" on the part of the railroad company. *Id.* at 41, 31 S.Ct. 136. The Court found that the presumption afforded due process of law; it was not arbitrary, and it rested "upon considerations of public policy arising out of the character of the business." *Id.* at 44, 31 S.Ct. 136.

The Court later examined a similar statute, but reached a different conclusion. *See Henderson* 279 U.S. at 644, 49

S.Ct. 445. Defendants challenged the constitutionality of a Georgia statute providing for a presumption of liability to railroad companies when damages arise to people or property by the running of locomotives. *Id.* at 640, 49 S.Ct. 445. The Court relied on *Turnipseed*'s requirement of a "rational connection" between the facts proved and the presumption, stating that "a statute creating a presumption that is arbitrary or that operated to deny a fair opportunity to repel it violates the due process of the Fourteenth Amendment." *Id.* at 642, 49 S.Ct. 445. The Mississippi statute in *Turnipseed* differed from the Georgia statute in that *Turnipseed*'s created "merely a temporary inference of fact that vanished upon the introduction of opposing evidence." *Id.* at 644, 49 S.Ct. 445. The Georgia statute, on the other hand, created "an inference that is given effect of evidence to be weighed against opposing testimony and it is to prevail unless such testimony is found by the jury to preponderate." *Id.* This difference, plus the Court's finding that there was no rational connection between a collision and liability for negligence on the part of the railroad company, led the Court to declare the statute unreasonable under the Due Process clause. *Id.*

The Court has applied the test ever since. In *Atl. Coast Line v. Ford*, it upheld a South Carolina statute after finding a strong rational connection between failing to give railroad crossing signals appropriately and presuming that said failure was the proximate cause of any injury in a railroad crossing. 287 U.S. 502, 506, 53 S.Ct. 249, 77 L.Ed. 457 (1932). More than forty years later, in *Usery v. Turner Elkhorn Mining Co.*, the court examined a statute providing that "if a miner with 10 or more years' employment in the mines

died from a respirable disease, it [was] rebuttably presumed that his death was caused due to pneumoconiosis."[5] 428 U.S. 1, 11, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (citations omitted). The statute was upheld, since there was a strong rational connection between proving long exposure to mine work and respiratory ailments, and developing pneumoconiosis. *Id.* Lower federal courts and state courts have followed the Supreme Court's lead. *See, e.g., N. Am. Coal Corp. v. Campbell,* 748 F.2d 1124, 1128 (6th Cir.1984) (holding that there was a rational connection between working 25 years in a coal mine and developing black lung disability); *Ala. By–Products Corp. v. Killingsworth,* 733 F.2d 1511, 1517–18 (11th Cir.1984) (holding that Congress was not "acting in a purely arbitrary manner" when finding a rational connection between working ten years in a coal mine and pneumoconiosis); *Jim Crockett Promotion, Inc. v. City of Charlotte,* 706 F.2d 486, 490–91 (4th Cir.1983) (finding no rational connection between complaints of loudness and prima facie evidence of violation of a noise ordinance); *In re L.D.B.,* 20 Kan.App.2d 643, 891 P.2d 468, 470–71 (Kan.Ct.App.1995) (finding a rational connection between a past judicial determination of unfitness and a presumption that the parent is unfit as to the present child); *Díaz Fontánez,* 2001 WL 1346759, at *10 (P.R.) ("[A]s a due process imperative, the existence of a rational nexus between the basic fact and the fact presumed is required.").

*Turnipseed* also was applied to criminal statutory presumptions. In *United State v. Gainey,* the Court declared unconstitutional a statute presuming guilt "for carrying on the business of a distiller without having given bond" upon a showing of the defendant's "unexplained presence at the

---

**5.** Pneumoconiosis is a chronic respiratory impairment caused by long-term inhalation of

coal dust. *Turner Elkhorn,* 428 U.S. at 7, 96 S.Ct. 2882.

site of an illegal still." 380 U.S. 63, 64, 85 S.Ct. 754, 13 L.Ed.2d 658 (1964). Unexplained presence, however, did not suffice to presume guilt for possession or custody of any still or distilling mechanism. *United ed States v. Romano*, 382 U.S. 136, 144, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965). In *Tot v. United States* the Court found no rational connection between proving possession of a firearm or ammunition by a person convicted of a violent crime, and presuming that he or she received it in interstate commerce. 319 U.S. 463, 469, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943). In so doing, the Court explained that "where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them it is not competent for the legislature to create it as a rule governing the procedure of courts." 319 U.S. at 468, 63 S.Ct. 1241.

This case law leaves no doubt that statutory presumptions must comply with due process requirements. Neither the Plaintiff nor the Government of Puerto Rico suggest otherwise. (Pls.' Opp'n at 8; Govt.'s Opp'n at 7). And there should be no doubt that presumptions that shift the burden of persuasion to the defendant are not unconstitutional *per se*. States still remain free to assign burdens as they consider appropriate, as long as the presumption complies with basic due process safeguards against arbitrariness. The question that remains, then, is how stringently are courts to apply the "rational connection" test.

Defendant points to *Tot*, among other cases, for guidance. (Def.'s Mot. Dismiss at 12). Cases like *Tot, Romano*, and *Gainey*, however, are not entirely on point when dealing with civil statutory presumptions. Because of the heightened due process concerns involved in criminal cases, criminal statutory presumptions are naturally subject to a stricter rational con-

nection standard. *See United States v. Jessup*, 757 F.2d 378, 387 (1st Cir.1985), *abrogated on other grounds by U.S. v. O'Brien*, 895 F.2d 810 (1st Cir.1990). Interpretations of civil statutory presumptions offer better guidance to deal with Law 100's presumption.

Still, the nexus requirement is not as weak or minimal as suggested by the Puerto Rico Supreme Court. *See generally Díaz Fontánez*, 2001 WL 1346759, at *10 ("Said nexus does need not be as strong or be based exclusively upon probabilities, but there must a minimum rational nexus, regardless of whether the presumption affects the weight of the evidence or only the burden of producing evidence.") (translation ours). While most United States Supreme Court cases have upheld statutory presumptions under the rational connection standard, the presumptions at issue shifted only the burden of production. *See, e.g., Turner Elkhorn*, 428 U.S. at 28, 96 S.Ct. 2882; *Ford*, 287 U.S. at 508, 53 S.Ct. 249; *Turnipseed*, 219 U.S. at 44, 31 S.Ct. 136. The Court's holding of unconstitutionality in *Henderson* shows that the application of the rational connection test varies when dealing with statutory presumptions that shift the entire burden of proof. In fact, this is the key distinction between *Turnipseed* and *Henderson*. Both statutes established similar presumptions of negligence by railroad companies when injuries occurred in locomotives. As such, both statutes were embedded with similar public policy goals of regulating the expanding railroad industry and aiding individual plaintiffs against the more powerful railroad companies. *Cf. Turnipseed*, 219 U.S. at 44, 31 S.Ct. 136 (stating the statutory presumption at issue rested "upon considerations of public policy arising out of the character of the business"). The difference rested on the kind of burden that shifted—*Turnipseed*'s statute

shifted only the burden of production, while the statute in *Henderson* "prevailed unless [the defendant's] testimony [was] found by the jury to preponderate." 279 U.S. at 644, 49 S.Ct. 445. The importance of this distinction has been confirmed and observed by other courts. *See Ford,* 287 U.S. at 508, 53 S.Ct. 249; *Fisher v. Vassar College,* 114 F.3d 1332, 1354–55 (2d Cir. 1997) (en banc) (Calebresi, J., concurring in part and dissenting in part).[6]

This suggests that statutory presumptions that shift the burden of proof face a stricter rational connection analysis than those that merely shift the burden of production. Law 100 is unlike *Turnipseed,* and more like *Henderson,* in that the presumption shifts the *entire* burden of proof to the employer—not just the burden of production. The Supreme Court in *Henderson* did not minimize this distinction, and neither does this Court. Having the burden of persuasion is an onerous burden, as even the Puerto Rico Supreme Court has recognized. *See Ibáñez,* 14 P.R. Offic. Trans. at 72.

 Guided by these findings, this Court can find no rational connection or nexus between the required proof and the presumption activated by Law 100. As explained above, and contrary to Plaintiff's suggestion (Pls.' Opp'n at 8), in this case Law 100's presumption would be activated upon Defendant merely *alleging* unjustified dismissal and proving *any* of the eligible "basic facts." *See Díaz Fontánez,* 2001 WL 1346759, at \*12. Applying the Puerto Rico Supreme Court's jurisprudence to gender discrimination claims, proving this "basic fact" means proving that Plaintiff is

a woman or that she was actually fired. *Cf. Díaz Fontánez,* 2001 WL 1346759, at \*12. Yet the Court sees little—if any— rational connection between being a woman and alleging unjustified dismissal, on the one hand, and a presumption of gender discrimination. Neither does it see any rational connection between proving actual dismissal and alleging unjustified dismissal, and a presumption of gender discrimination. The irrationality of this framework is evident when simpler language is used: When an employer fires a woman and the employee merely alleges unjustified dismissal, one must presume gender discrimination; when an employer dismisses someone and the employee claims that the dismissal was unjustified, one should presume discrimination. Proof of unjustified dismissal *and* being a woman might provide such rationality.[7] Proof of the four elements of the McDonnell Douglas prima face case certainly would. But the Puerto Rico Supreme Court's attempt to conform Law 100 with the Due Process clause by requiring such meager evidence falls short. Employers are being subjected to a demanding burden of proof and a presumption of liability upon evidence of something that employers have the right to do: dismiss their employees. Conversely, Plaintiffs do not even have to produce evidence that their employers did anything at all, be it legal or illegal; they just have to show that they belong to a protected class and pray unjustified dismissal (pray, not proof). There is no due process in such an arbitrary legal framework.

These due process deficiencies are magnified when Law 100 is compared to other

---

6. This part of Judge Calebresi's opinion was adopted by the majority. *See Vassar College,* 114 F.3d at 1342.

7. The Court does not have an opinion as to the constitutionality of Law 100's presumption at its face. This opinion is examining only Law 100's burden-shifting framework in correlation with a Law 80 claim, as applied to Defendant in this case, and as interpreted and applied by the Puerto Rico Supreme Court in *Díaz Fontánez.*

anti-discrimination statutes. ADEA and Title VII claims require plaintiffs to prove the four-part McDonnell Douglas prima facie case before the less onerous burden of production shifts. Law 100, on the other hand, requires less proof—a mere allegation and proof of gender or an actual firing—to shift a more demanding burden. This Court cannot understand why shifting the burden of production requires a four-part prima facie case, but shifting the burden of proof requires only an allegation, plus one element of the same prima facie case.[8] A shift of a more demanding evidentiary burden, as in the case of Law 100, should require additional safeguards—not fewer safeguards.

This is the case in ADEA and Title VII claims pursued by direct evidence of discrimination. *See Lipsett,* 864 F.2d at 899 ("This framework [McDonnell Douglas test] is inapplicable when the plaintiff can prove discrimination by *direct* evidence.") (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). In these cases, the plaintiff must prove—by the preponderance of the evidence and through direct evidence—that "unlawful discrimination was a motivating factor in the employment decision" *before* the burden of proof shifts to the defendant. *Id.* This heightened initial burden is also found in state statutes that shift the burden of persuasion to the employer. *See, e.g., Schweigert v. Provident,* 503 N.W.2d 225, 229 (N.D.1993) (requiring a plaintiff to prove *all* the elements of the McDonnell Douglas test to shift the burden of persuasion to the employer).

Plaintiffs and the Government of Puerto Rico suggest that the strong public policy considerations underlying Law 100 provide enough rational connection to the presumption. (Pls.' Opp'n at 8–9; Govt.'s Opp'n at 7). There is also some academic commentary supporting this contention. *See, e.g.,* Strong, *McCormick on Evidence, supra,* § 345, at 459–60 ("[T]o impose a strictly applied 'rational connection' limitation would mean that only presumptions based on probability would be permissible. Such limitation would ignore other, equally valid, reasons for the creation of the rules."); Wright & Graham, Jr., *Federal Practice and Procedure, supra,* § 5129, at 630 (arguing that a rational connection can be inferred "when it is based on public policy, even though as a matter of probative worth the basis of fact is of little value as evidence of the presumed fact"). This argument finds some sustenance in the Court's statement in *United States v. Gainey* that "in matters not within specialized judicial competence or completely commonplace, significant weight should be accorded to the capacity of Congress to amass the stuff of actual experience and cull conclusions from it." 380 U.S. at 67, 85 S.Ct. 754. Citing *Gainey,* the First Circuit in *Keith Fulton & Sons, Inc. v. New England Teamsters & Trucking Ind. Pension Fund, Inc.* upheld a presumption under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, providing that a determination by the trustees as to the withdrawal liability "was presumed correct unless the party contesting the determination shows by a preponderance of the evidence that

---

8. This Court is not first to raise these concerns, as at least one member of the Puerto Rico Supreme Court raised them before. *See Sandoval,* 1999 P.R. Sup. LEXIS 172, at *49 n. 10 (Negrón García, J., dissenting) ("We reiterate that for our presumption of discrimination due to age to comply with the require-

ments of due process and provide a traditional connection between the fact presumed and the basic facts, it is necessary to activate it in the manner that federal jurisprudence has conceived is constitutionally appropriate.") (translation ours).

the determination was unreasonable or clearly erroneous." 762 F.2d 1137, 1145 (1st Cir.1985). The court explained that the difference between statutory presumptions that shift the burden of production and those that shift the burden of proof is insignificant "in determining the appropriate deference to pay to Congress' judgment on an issue unquestionably outside of 'specialized judicial competence.'" *Id.*

Undoubtedly, strong public policy considerations are behind Law 100. The statute's Exposition of Motives identifies discrimination in the workplace as a growing threat, and cites statistics backing this concern. *See* 1959 P.R. Laws 100. The explicit inclusion of language establishing a presumption is a further indication of the legislature's intent. *See* 29 P.R. Laws Ann. § 148. The argument that these strong policy considerations embed Law 100 with sufficient rational connection faces two obstacles, however.

First, the argument finds no support in the Supreme Court jurisprudence. In fact, it runs contrary to *Henderson.* Because of the similarity with Mississippi's statute in *Turnipseed*'s, one can assume that strong public policy consideration underlay Georgia's statutory presumption of liability in railroad accidents. The Court specifically warned that "[l]egislative fiat may not take the place of fact in the judicial determination of issues involving life, liberty, or property." *Henderson,* 279 U.S. at 462, 49 S.Ct. 384. Similar language, but in the context of a criminal statute, is also found in *Tot:* "[T]he due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated." 319 U.S. at 467, 63 S.Ct. 1241.

Here, the Court does not question the wisdom and legality of the Puerto Rico legislature's finding of widespread discrimination. Neither does the Court question the need to provide a burden-shifting framework that so benefits employees. But just as the policy aims behind Georgia's statutory presumption were not enough to pass constitutional muster, the valid policy considerations behind Puerto Rico's Law 100 presumption do not save the presumption's lack of rational connection. Courts must strive to respect the public policy goals behind statutory enactments, *see Minn. v. Clover Leaf Creamery Co.,* 449 U.S. 456, 469, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), but this deference is not a license for arbitrariness. The same principle applies to statutory presumptions if they provide no rational connection—regardless of their policy motivations.

Second, the burden-shifting presumption of Law 100 falls within the realm of "specialized judicial competence" and, as such, is clearly distinguishable from the presumption at issue in *Keith Fulton.* The presumption in *Keith Fulton* was part of ERISA and delegated substantial discretion to the plan's trustees. ERISA is a complex statute, and one where the specialized knowledge of parties like a plan's trustees is indispensable. Law 100 is nowhere as technical or complex as ERISA. Rebuttable presumptions and burden-shifting frameworks are frequently examined by courts. In fact, burden-shifting frameworks often are created and developed by courts, and not legislatures. This is the case of Law 100, where the legislature created the presumption, but the judiciary developed the prima facie requirements to activate the presumption. Courts—both federal and state—frequently examine employment discrimination statutes easing the initial burden of employers. *See, e.g., Woodbury County v. Iowa Civil Rights Comm'n,* 335 N.W.2d 161, 165 (Iowa 1983);

*Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrimination,* 431 Mass. 655, 729 N.E.2d 1068, 1077–78 (Mass.2000); *Pomranky v. Zack Co.* 159 Mich.App. 338, 405 N.W.2d 881, 883–84 (Mich.Ct.App. 1987); *Schweigert v. Provident,* 503 N.W.2d 225, 228–29 (N.D.1993); *Ellingson v. Spokane Mortgage Co.,* 19 Wash.App. 48, 573 P.2d 389, 392–93 (Wash.Ct.App. 1978).

Moreover, Law 100 is not fundamentally different from other anti-discrimination statutes at the federal and state level. The Supreme Court of Puerto Rico itself has pointed to the similarities between the federal anti-discrimination statutes and Law 100. *See Garcia Pagán v. Shiley Caribbean,* 22 P.R. Offic. Trans. 186, 193 (1988) ("[W]e have adopted some of [ADEA] rules in view of the similarity of purposes of both statutes."); *see also Díaz Fontánez,* 2001 WL 1346759, at *9 ("Locally, the courts have developed a scheme slightly different [from the McDonnell Douglas test], but at the same time similar in structure, under Law 100.") (translation ours). Other states have adopted similar statutory presumptions. *See, e.g., Schweigert v. Provident,* 503 N.W.2d at 228–29 ("[U]nder North Dakota law, if a plaintiff persuades the trier of fact of facts giving rise to a presumption, the burden of persuasion shifts to the defendant to rebut that presumption."). Neither are the public policy concerns underlying the statute so unique to Puerto Rico.[9] Discrimination in the employment is a widespread phenomenom. And statutes aimed at eradicating discrimination in the workplace are a popular legal response. As such, Puerto Rico's Law 100 falls wholly within the specialized competence of the courts.

For these reasons, section 148 of Puerto Rico Law 100 is hereby declared unconstitutional as applied to Defendant. The Court emphasizes that it is not declaring section 148 unconstitutional on its face nor is it questioning the statute's shift in the burden of persuasion. The Court's holding is limited to Law 100's burden-shifting framework in correlation with a Law 80 claim, as applied to Defendant in this case, and as interpreted and applied by the Puerto Rico Supreme Court in *Díaz Fontánez.*

Having found that applying Law 100's burden-shifting framework to Defendant in this case violates due process, the claims against Defendant under Puerto Rico Law 100 are hereby **DISMISSED.**

**IT IS SO ORDERED.**

---

9. Curiously, Law 100 cites discrimination statistics from the United State—not from Puerto

Rico—in its Exposition of Motives. *See 1959* P.R. Laws 100.