**Omar HOYOS, et al., Plaintiffs,**

**v.**

**TELECORP COMMUNICATIONS, INC., et al., Defendants.**

**No. CIV.04–2313 (JP).**

United States District Court, D. Puerto Rico.

Dec. 20, 2005.

Aníbal Lugo–Miranda, Aníbal Lugo Miranda Law Offices, San Juan, PR, for Plaintiffs.

Raquel Fas–Bravo, Luis F. Antonetti–Zequeira, Goldman Antonetti & Cordova, San Juan, PR, for Defendants.

### OPINION AND ORDER

PIERAS, District Judge.

## I. INTRODUCTION

Before the Court is defendants' "Motion for Summary Judgment" (No. 55), and the plaintiffs' opposition thereto.

The plaintiffs in this case are Omar Hoyos Aliff ("Hoyos") and his wife Cecilia Mejía Jiménez. The defendants are Telecorp Communications, Inc., AT & T Wireless, and Suncom Wireless Puerto Rico Operating Company LLC. Plaintiff Hoyos is a former employee of the defendants, and the plaintiffs allege that the defendants unlawfully terminated Hoyos' employment because of his gender and failed to pay benefits required under ERISA. The plaintiffs claim that the defendants' conduct violated Law 80 of May 30, 1976, P.R. Laws Ann. tit. 29 § 185; Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29 § 146; Law 115 of December 20, 1991, P.R. Laws Ann. tit. 29 § 194a; ERISA; and Article 1802 of the Puerto Rico Constitution, P.R. Laws Ann. tit. 31 § 5141.[1]

The defendants now move for summary judgment of the plaintiffs' claims. The Court hereby **GRANTS** the defendants' motion.

## II. MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

After thoroughly evaluating the parties' stipulations in the record, the defendants' statement of uncontested facts and supporting evidence, and the plaintiffs' opposition thereto, the Court determined that the following material facts are not in genuine issue or dispute:

1. Plaintiff Omar Hoyos is a citizen of the Commonwealth of Puerto Rico.

2. Plaintiff Cecilia Mejías Jiménez is a citizen of the Commonwealth of Puerto Rico.

3. Defendants Telecorp Communications Inc. and AT & T Wireless are foreign corporations doing business in Puerto Rico dedicated to wireless communication services.

4. Defendant New Cingular Wireless Services, Inc. is a corporation organized under the laws of Delaware, with its principal offices located in Redmond, in the State of Washington, and Atlanta, in the State of Georgia.

5. Defendant New Cingular Wireless Services, Inc. is authorized to do business in Puerto Rico.

6. All of the above corporations must comply with federal and state laws, regulations and guidelines concerning employment laws.

---

1. The plaintiffs devoted a substantial portion of their memorandum to Title VII, although they raised no Title VII claim in their complaint.

7. Said federal and state laws, regulations, and guidelines are applicable also to the Commonwealth of Puerto Rico.

8. Hoyos was an employee of the defendant from March 22, 1999 to October 11, 2003.

9. At all times relevant to the complaint, the defendants had a detailed anti-harassment and discrimination policy that was part of the Employee Handbook called the Colleague Guidebook.

10. Hoyos received a copy of AT & T's Employee Handbook on November 15, 2002.

11. Hoyos never complained of any discrimination while employed with the defendant.

12. Hoyos testified at his deposition that "weeks after I was fired, that's when I put together all the pieces and I saw it clear, that I was fired because of discrimination by sex."

13. On or about January 1, 2003, Hoyos was promoted to Director of the entire Sales Organization.

14. Telecorp Communications, Inc. was acquired by AT & T in May of 2001.

15. Thereafter, plaintiff Hoyos was employed by AT & T.

16. During his almost five years of service and employment, Hoyos received various merit increases, bonuses, prizes, recognitions, and his evaluations were excellent.

17. Every year he received salary increases, bonuses, and prizes in recognition of his performance.

18. Hoyos' annual base salary at the time of his termination of employment was $92,000.00.

19. On April 4, 2003, Hoyos attended a business meeting at the Intercontinental Hotel in Isla Verde.

20. During the meeting, Hoyos invited several employees of the company, among them Ms. Nancy Alomar ("Alomar"), to go to the El San Juan Hotel for drinks.

21. Alomar accepted Hoyos' invitation and accompanied him to the El San Juan Hotel.

22. They walked together to the front of the parking lot to Hoyos' car to leave some mementos given at the meeting.

23. After leaving the mementos in Hoyos' car, they went to the El San Juan Hotel.

24. Hoyos had a beer and Alomar had a glass of wine.

25. Hoyos decided it was time to go when it was close to midnight.

26. Hoyos offered Alomar to walk her to her car, because her car was in the back of the parking lot.

27. After they reached her car, Alomar gave Hoyos a ride back to his car.

28. On April 8, 2003, Alomar filed an internal company complaint alleging that Hoyos had sexually harassed her.

29. She alleged that Hoyos grabbed her by the shoulders and tried to kiss her.

30. Hoyos emphatically denied Alomar's charges.

31. Hoyos admitted he gave Alomar a good night kiss on the cheek.

32. The company investigated Alomar's charges and could not conclude that Hoyos had violated the Company's Sexual Harassment Policy.

33. Hoyos was reminded to maintain the complaint and the information related to its investigation confidential in order to protect the privacy and reputation of all the parties involved.

34. In May 2003, the company restructured the corporate sales channel and Alomar started to report directly to Mr. Louis

Cruzado, the newly hired Corporate Sales Manager.

35. In July 2003, during a CPA Convention, the defendant had a marketing "booth" to promote its products.

36. Raúl Burgos, the Vice President and General Manager and Hoyos' then direct supervisor, and Jaime Pontón, the Human Resources Manager, instructed Hoyos to abstain from participating in the booth, because Alomar would be present, and that he could participate in the recreational activities, such as golf.

37. The company paid for Hoyos' stay in the hotel, but Burgos and Pontón instructed him to not participate in the exhibition area.

38. During the month of August, Louis Cruzado resigned from his position as Corporate Sales Manager and, as a temporary measure pending the completion of the hiring process, Hoyos was instructed to funnel all business communications with Alomar through Pontón.

39. Hoyos objected emphatically but was told by Burgos that his other alternative was to resign.

40. On or about September 12, 2003, Burgos proposed and received approval to change the entire sales organizational structure to have three directors, one for each channel, instead of having one director with all the responsibility for the three sales channels (Omar Hoyos).

41. Hoyos was named Sales Director for the Alternative Channels and New Products.

42. Hoyos' compensation and benefits package was not affected by the restructure.

43. Alomar began reporting to or through Mr. Pontón.

44. On October 2nd through 4th, 2003, the company attended the SME Convention at the Westin Río Mar.

45. On October 2, 2003, Hoyos visited the Company booth at the SME Convention on the day Ms. Alomar was assigned to the booth.

46. On the afternoon of Friday, October 3, 2003, Hoyos visited the defendants' convention booth with several other co-employees upon finishing that day's marketing presentation.

47. Ms. Alomar was present, along with other sales representatives.

48. On October 3, 2003, Alomar delivered a letter by hand to Pontón.

49. In the letter, Alomar complained that the pattern of intimidation and hostile environment towards her from Hoyos was evidenced by his presence at the SME Convention on the day she was assigned to the booth, which was contrary to what had been agreed between her and the company.

50. In the letter, Alomar claimed that Hoyos showed up at the booth and stood next to her with the intent to exercise emotional pressure and to intimidate her in her vulnerable position.

51. In the letter, Alomar stated that the inaction of the company left her no other choice than "to seriously consider the alternative that experienced labor attorneys have been suggesting for some time."

52. On that Friday night, Jeanne Habib, corporate counsel for the defendant, telephoned Hoyos regarding his attendance that day at the company's booth.

53. Habib told Hoyos that he violated the agreement to not visit the company booth during the dates Alomar was assigned to the booth.

54. On October 11, 2003, Hoyos was terminated from his employment with the defendant.

55. Hoyos signed a Stock Option Agreement with Telecorp, containing a Covenant Not to Compete/Non–Solicitation/Limitation of Public Statement agreement, dated August 31, 1999.

56. The Stock Option Agreement points out that it was "Not intended to qualify as an incentive stock option agreement within the meaning of Section 422 of the Internal Revenue Code of 1986."

57. For the following three years, Hoyos signed several Stock Option Agreements with Telecorp, the last of which was signed on January 14, 2002.

58. The last two Stock Option Agreement contracts were subject to all of the terms and conditions set forth in the Telecorp PCS, Inc.'s 2000 Employee Director and Consultant Stock Plan.

59. Employee participation in the Telecorp PCS, Inc.'s 2000 Employee Director and Consultant Stock Plan ("the Plan") is voluntary.

## III. STANDARD

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suárez–Cruz,* 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate

when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Insurance Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989).

In a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party, who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Goldman,* 985 F.2d at 1116.

## IV. CONCLUSIONS OF LAW

### A. *Law 80*

Puerto Rico Law 80 provides relief to employees who are terminated from employment "without good cause." P.R. Laws Ann. tit. 29 § 185a (2003). An em-

ployee's initial burden under Law 80 is to allege unjustified dismissal and prove actual dismissal. *Alvarez–Fonseca v. Pepsi Cola of P.R.*, 152 F.3d 17, 28 (1st Cir.1998). If the employee meets this burden, the employer must establish by a preponderance of the evidence that the discharge was made for good cause. *Id.,* at 28.

■ The statute mentions five examples that constitute good cause, but these are not the only grounds for good cause. P.R. Laws Ann. tit. 29 § 185b (2003). A termination which is "made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment" is not a termination for good cause. P.R. Laws Ann. tit. 29 § 185b (2003). Generally, dismissals for good cause are those linked to the ordinary conduct of business. *Morales v. Nationwide Ins. Co.*, 237 F.Supp.2d 147, 153 (D.P.R.2002). Courts have found good cause for termination exists where an employee violated an employer's internal procedures, *Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036 (D.P.R.1985); and where an employee failed to follow rules and supervisory instructions, *Menzel v. Western Auto Supply Co.*, 662 F.Supp. 731 (D.P.R. 1987). Law 80 does not invariably require repeated violations, particularly where an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to await further occurrences. *See González v. El Dia, Inc.*, 304 F.3d 63, 75 (1st Cir.2002), *citing Delgado Zayas v. Hosp. Interamericano de Medicina Avanzada*, 137 D.P.R. 643, 650 (1994).

■ In this case, the undisputed facts show that the decision to terminate Hoyos' employment was made for good cause. The defendants terminated his employment for violating his supervisors' instructions to not visit the company booth where he would have contact with Alomar, and

after Alomar threatened legal action against the defendants for their failure to protect her from Hoyos. Although the investigation into whether Hoyos made advances on Alomar was also inconclusive, it is undisputed that he disobeyed instructions to not visit the booth where he could have contact with her. This fact alone shows that there is no genuine issue as to whether the decision to terminate Hoyos' employment was made on a mere whim in violation of Law 80. The defendants are thus entitled to summary judgment on the plaintiffs' Law 80 claim.

**B.** *Law 100*

■ Law 100 is Puerto Rico's general employment discrimination statute that bans employment discrimination on the basis of gender. *See Cardona–Jiménez v. Bancomerico de Puerto Rico*, 174 F.3d 36, 42 (1st Cir.1999); *see also Álvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 27 (1st Cir.1998). Under Law 100, the employee has the initial evidentiary burden to establish three factors: (1) that he or she suffered an adverse employment action, (2) that the adverse employment action was unjustified (not for good cause), and (3) some basic fact substantiating the type of discrimination alleged. *Morales v. Nationwide Ins. Co.*, 237 F.Supp.2d 147, 153 (D.P.R.2002). If the employee establishes these three factors, the burden shifts to the employer to prove by a preponderance of the evidence that the adverse employment action "was not motivated by discriminatory animus." *Id.,* at 153. It is not necessary for the employer to "articulate a reasonable explanation for the [adverse employment action]." *Ibañez v. Molinos de P.R.*, 14 P.R. Offic. Trans. 61, 76, 1983 WL 204221 (1983). If the employer rebuts the presumption, then the employee has the burden of proving the existence of discrimina-

tion. *Morales,* 237 F.Supp.2d at 153. To determine what constitutes good cause under a Law 100 claim, a court looks to the definition of good cause in Law 80. *Báez García v. Cooper Labs, Inc.,* 120 P.R. Offic. Trans. 153, 161, 1987 WL 448243 (1987).

■ The defendants are entitled to summary judgment on the plaintiffs' Law 100 claims, because there is no genuine issue as to whether the defendants' employment decisions were made for good cause, and the Court need not reach the question of whether a genuine issue of fact exists as to whether the defendants' actions were motivated by discriminatory animus. The undisputed facts show that Hoyos suffered two adverse employment actions at the hands of the defendants. First, in September of 2003, Burgos restructured the sales department such that it would have three directors, one for each sales channel, rather than one director for all three channels. Although the restructure did not cause a decrease in Hoyos' compensation or benefits, it resulted in a demotion. Before the restructure, Hoyos was the director of the entire sales department of over a hundred employees; and after the restructure he was only one of three directors, and supervised only thirteen employees. The second adverse employment action occurred when Hoyos was fired.

■ No genuine issue exists as to whether the defendants took these actions for good cause. They restructured the sales department in order to prevent interaction between Alomar and Hoyos after she filed her internal sexual harassment complaint, and to prevent her from having to report to him. Hoyos admitted in his deposition: "[A]ll of a sudden, they decided, based on the situation with Nancy Alomar, that they needed to protect the company, and they restructured, and they just put me aside." No. 56–2 at 69. This indicates that the decision to restructure the sales department was not made on a mere whim, but was made for a legitimate business purpose. The plaintiffs have produced no evidence which indicates the defendants did not have good cause to restructure the sales department. Finally, as discussed in the context of the plaintiffs' Law 80 claim, there is no genuine issue as to whether the defendants terminated Hoyos for good cause.

### C. *Law 115*

■ Law 115 provides that no employer may discriminate against an employee for offering or attempting to offer "any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico," except where the disclosure is defamatory or of privileged information. P.R. Laws Ann. tit. 29 § 194a(a) (2003). The plaintiffs have failed to produce any evidence that Hoyos offered or attempted to offer testimony or information either to a legislative, administrative, or judicial forum. The defendants are therefore entitled to summary judgment on the plaintiffs' Law 115 claims.

### D. *ERISA*

The plaintiffs claim that Hoyos is entitled to ERISA benefits under the defendant's Employee Stock Option Plan. The defendants argue that they are entitled to summary judgment on the ERISA claims, because no genuine issue exists as to whether the plan is an ERISA plan.

■ ERISA allows a civil action by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.A. § 1132(a)(1)(B). In order for a benefit scheme to be an

ERISA plan, it must be a plan, and it must be covered by ERISA. A plan exists if the intended benefits, the intended beneficiaries, the source of financing, and the procedure for obtaining benefits can be identified. *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 455 (1st Cir.1995). A plan is covered by ERISA if it provides welfare or pension benefits, is not excluded under ERISA's safe harbor provision, and is established or maintained by an employer engaged in interstate commerce intending to benefit employees. *Rivera Sanfeliz v. Chase Manhattan Bank*, 349 F.Supp.2d 240 (D.P.R.2004). ERISA defines a "plan" and "employee benefit plan" as either an employee welfare plan, an employee pension benefit plan, or a plan which is both an employee welfare benefit plan and an employee pension benefit plan. 29 U.S.C.A. § 1002(3).

In order for a plan to be an ERISA plan, it must also involve some ongoing administration by the employer. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 16, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). The *Fort Halifax* Court reasoned that the purpose for ERISA was to protect the administrative integrity of benefit plans, and held that a Maine statute requiring the payment of a severance benefit by an employee who relocated did not amount to a "plan" for ERISA purposes. *Id.*, at 16, 107 S.Ct. 2211. The Court reasoned,

> The requirement of a one-time, lump sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize . . . To do little more than write a check

hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Id.*, at 12, 107 S.Ct. 2211. A proffered benefit scheme which involves employer obligations not materially greater than those required in *Fort Halifax* is not an ERISA plan. *Belanger*, 71 F.3d at 455.

■ The defendants' stock option program is not an ERISA plan, because it does not provide welfare or pension benefits, and does not contain an administration scheme as required under *Fort Halifax.* The statute defines a "welfare benefit plan" as a plan established or maintained for the purpose of its participants or beneficiaries' "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services." 29 U.S.C.A. § 1002(1). It defines an employee "pension benefit plan" as a plan which "provides retirement income to employees" or "results in the deferral fo income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C.A. § 1002(2)(A). The defendants' Stock Option Program was not created to provide welfare benefits listed in the statute and does not provide retirement income or allow participants to defer income. Courts have consistently found that stock option programs similar to the defendants' do not meet the statutory definition. *See Oatway v. American International Group*, 325 F.3d 184, 189 (3rd Cir.2003); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir.1980); *Rivera Sanfeliz*, 349 F.Supp.2d

at 247. The stock option program also does not require sufficient administration for it to be an ERISA plan under *Fort Halifax* because, as both parties agree, it does not involve the administration of funds. Because there is no genuine issue as to whether the stock option program is an ERISA plan, the defendants are entitled to summary judgment on the ERISA claims.

### E. *Arroyo and Article 1802*

 The plaintiffs claim that "Plaintiff's dismissal was illegal and in violation of the Puerto Rico Constitution, according to the case of *Arroyo v. Rattan*, 117 D.P.R. 35, [and] in violation of Article 1802 of the Puerto Rico Civil Code." No. 1–2. In *Arroyo*, the Supreme Court of Puerto Rico recognized a cause of action where an employer's decision to terminate an employee was made in violation of public policy of constitutional magnitude. *Arroyo v. Rattan Specialties*, 117 P.R. Offic. Trans. 49, 76, 1986 WL 376812 (1986). The court in *Arroyo* concluded that dismissal of an employee who refused to submit to a polygraph test violated a constitutional public policy. *Id.*, at 76. The court explained: "Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." *Id.*, at 69. The undisputed facts in this case show that Hoyos was fired for only one reason, violating an order of his superiors to not visit the company booth, and therefore allow for no inference that Hoyos' dismissal violated public policy of constitutional magnitude. The defendants are thus entitled to summary judgment on the plaintiffs' *Arroyo* claim.

 Article 1802 is Puerto Rico's general torts statute. It provides: "A person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."

P.R. Laws Ann. tit. 31 § 5141. Discrimination in employment cases are recognized causes of action under Article 1802. *See Torres Hernández v. Padilla*, 634 F.Supp. 144 (D.P.R.1986).

 The defendants are entitled to summary judgment on the plaintiffs claims under Article 1802, because there is no genuine issue as to whether the defendants' termination of Hoyos' employment was motivated by discriminatory animus. The plaintiffs offer no facts which support the contention that Hoyos was fired because of his gender. The plaintiffs compare defendants' treatment of Hoyos with the defendants' treatment of Alomar. They present facts that, while Hoyos violated an order and was fired, Alomar disobeyed an order to keep her sexual harassment complaint confidential and was not disciplined. The plaintiffs argue that difference in treatment is due to the employees' gender. The plaintiffs argument fails because Hoyos and Alomar were not similarly situated. They violated different orders from the company, and the company is entitled to decide Hoyos' infraction was more serious than Alomar's. The plaintiffs also attempt to raise a genuine issue as to discriminatory animus by establishing that Burgos' stateside supervisor once told Burgos that he needed to diversify the staff who reported to him directly, because only one of the employees was female. No. 67–2 at 14. This comment, however, was a stray remark that occurred outside the context of the decision to terminate Hoyos, and thus is not evidence that the termination was motivated by discriminatory animus. Because there is no genuine issue as to whether the defendants were motivated by gender based animus when they terminated Hoyos, they are entitled to summary judgment of the Article 1802 claims.

## V. CONCLUSION

The Court **GRANTS** the defendants' motion for summary judgment. Judgment will be entered dismissing all of the plaintiffs' claims with prejudice.

**IT IS SO ORDERED.**