Arlene PAGAN–ALEJANDRO, Plaintiff,

v.

PR ACDELCO SERVICE CENTER, INC.; Royal Motors Corp.; John and Richard Doe; X and Y Co., Defendants.

Civil No. 05–1337 (GAG).

United States District Court, D. Puerto Rico.

Dec. 28, 2006.

Kevin M. Acevedo–Carlson, Sonia B. Alfaro–De–La–Vega, San Juan, PR, for Plaintiff.

Jose E. De–La–Cruz–Skerrett, Rafael G. Rivera–Rosario, Ricardo A. Piovanetti–Dohnert, De La Cruz Skerret Law Offices, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

GELPI, District Judge.

This matter is before the court on a motion for summary judgment submitted by Defendants PR ACDelco Center, Inc. ("PR ACDelco") and Royal Motors, Inc. ("Royal Motors"). Plaintiff, Arlene Pagan–Alejandro, commenced this action after she allegedly suffered pregnancy discrimination in violation of Title VII and Puerto Rico law. After reviewing the pleadings and pertinent law, the court **DENIES** Defendants PR ACDelco and Royal Motors' motion for summary judgment (Docket No. 67).

## I. Relevant Factual & Procedural Background

The following facts were taken from the parties' summary judgment pleadings. On August 27, 1999, Plaintiff applied for a job at PR ACDelco. *See* Appendix 3, Docket No. 67. PR ACDelco is a Puerto Rico corporation with its principal place of business in Rio Piedras. *See* Docket No. 67 at ¶ 1. On August 31st, 1999, PR ACDelco hired Plaintiff under the provisions of a probationary contract due on November 30th, 1999. *See* Appendix 4, Docket No. 67. Plaintiff was hired as a cashier. *See*

Appendixes 3 and 4, Docket No. 67; Exhibit U, Docket No. 76. Additionally, Plaintiff performed other tasks such as receptionist and filing. *See* Appendix 5, p. 32, Docket No. 67.

Some time after being hired, plaintiff became pregnant. *See* Appendix 6, ¶ 7, Docket No. 67. As a result of that pregnancy, Plaintiff took a maternity leave benefit in 2000 and gave birth to her first child on July 14, 2000. *Id.* In late 2000 or early 2001, Plaintiff became pregnant for a second time. She took her second maternity leave benefit in 2001 and returned to work on or about August 27, 2001. *Id.* at ¶ 8.

The parties differ as to Plaintiff's position once she returned from her second maternity leave and how it came about that she stopped working for PR ACDelco. Defendants aver that Plaintiff was not substituted by any employee during her second maternity leave, and that Plaintiff's duties were simultaneously performed by various employees. *Id.* at ¶ 9. When Plaintiff came back to work, she returned to her original position, with her regular duties. *Id.* at ¶ 10. As part of those regular duties, Jesus Montano–Valea, Plaintiff's supervisor, temporarily assigned Plaintiff to do some filing work. *See* Exhibit 7, ¶ 3, Docket 67. On the same day that Plaintiff initiated this filing work, she demonstrated a negative attitude toward the job, to the point that she left for lunch and never returned to work. *Id.* at ¶ 5.

In contrast, Plaintiff claims that upon returning from her second maternity leave, she did not return to her old job as a cashier because someone else was performing her cashier duties. *See* Appendix 11, Docket No. 67. Instead, Plaintiff was only asked to do filing work. Specifically, Plaintiff avers the following. When Plaintiff returned from her second maternity leave, she was asked to do filing work that first day, which she completed. *See* Exhibit B, pp. 150, 164, Docket No. 76. On her second day, Plaintiff arrived at 8:00 AM. *See* Exhibit A, p. 46, Docket No. 76. She was asked again to do some filing work, which she finished in a speedy fashion. *Id.* By 8:30 AM, plaintiff was done and had no more work to perform. *Id.* Then, Mr. Montano–Valea told Plaintiff to go see Ginnette Pereira at Royal Motors. *Id.* Royal Motors is a Puerto Rico corporation located at the same physical address as PR ACDelco. *See* Docket No. 67 at ¶¶ 1, 3. The Montano family owns both PR ACDelco and Royal Motors. *See* Exhibit B, p. 8 and Exhibit C, pp. 23–24, Docket No. 76. Ms. Pereira, a Royal Motors' employee, asked Plaintiff for a resignation letter and gave her a job application for Royal Motors, per Mr. Montano–Valea's instructions. *See* Exhibit A, pp. 47–48, Docket No. 76. Ms. Pereira also told Plaintiff that Royal Motors would not honor her seniority, and that she would start anew, if hired. *Id.* When Plaintiff returned to PR ACDelco to fill out the job application, she saw Mr. Montano–Valea. *Id.* at 48–49. Yelling at Plaintiff, Mr. Montano–Valea asked her to leave and told her he did not want to see her anymore. *Id.* Plaintiff left PR ACDelco around 10:00 AM. *Id.* at 49–50.

In her statement of additional material facts, Plaintiff alleged four additional acts of discrimination against her. During her second pregnancy, a manager named Nathaniel gave Plaintiff warnings for being late to work. *See* Exhibit A, pp. 35–36, Docket No. 76. At the same time, other employees, including a male employee called "Calculin," would also be late to work and not be reprimanded. *Id.* at 36. Additionally, Plaintiff asked for time off on Saturdays to see her gynecologist because Plaintiff developed complications with her pregnancy, which required her to see her

doctor on a weekly basis, and Saturdays was the only day that her doctor could see her. *Id.* at 37, 39. Betty Montano, one of Plaintiff's supervisors, denied Plaintiff's request and told Plaintiff that she would need to find another doctor. *Id.* Some time later, Plaintiff, while at work, began to bleed because her "mucus plug" popped out. *Id.* at 43, 74. As Plaintiff was leaving to go see her doctor, she informed Jose Somohano, another supervisor, that she had to go because she was bleeding. *Id.* Mr. Somohano said "no" because he did not have a cashier to replace her. *Id.* No one at work offered to take Plaintiff to the doctor. *Id.* As a result of this incident, Plaintiff was hospitalized for about a week in intensive care. *Id.* After being released from the hospital, Plaintiff decided that she wanted to return to work. *Id.* at 44. Her doctor authorized her to work only four hours a day and gave Plaintiff a medical certificate to that effect. *Id. See also* Exhibit V, Docket No. 76. Plaintiff gave Ms. Montano the medical certificate and ask her for permission to work on a part-time basis. *See* Exhibit A, p. 44, Docket No. 76. Ms. Montano denied Plaintiff's request. *Id.*

On June 14, 2002, Plaintiff filed a charge of discrimination with the Antidiscrimination Unit of the Puerto Rico Department of Labor ("ADU"). *See* Appendix 11, Docket No. 67. This charge was cross-filed with the Equal Opportunity Employment Commission ("EEOC"). The ADU issued a right to sue letter on December 23, 2004. *See* Appendix 14, Docket No. 67. The EEOC issued its right to sue letter on January 27, 2005. *See* Appendix 3, Docket No. 3.

On March 24, 2005, Plaintiff filed a complaint against PR ACDelco alleging pregnancy discrimination under Title VII of Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2 et seq., as amended by the Equal Employment Opportunity Act of 1972, the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k); Puerto Rico's Constitution, Article II § 1 (Local Bill of Rights); Law No. 3 of March 13, 1942, as amended, P.R. Laws Ann. tit. 23 § 467 et seq.; Law No. 69 of July 6, 1985, as amended, P.R. Laws Ann. tit. 29 § 1321 et seq.; Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29 § 146 et seq.; Law No. 80 of May 30 of 1976, as amended, P.R. Laws Ann. tit. 29 § 185 et seq.; and Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. § 5141. *See* Docket No. 1. Plaintiff amended the complaint on April 18, 2005 to include Royal Motors as a co-defendant. *See* Docket No. 3. On June 6, 2005, PR ACDelco filed its answer to the amended complaint. *See* Docket No. 5. Plaintiff filed a second amended complaint on August 12, 2005. *See* Docket No. 24. On June 30, 2005, PR ACDelco and Royal Motors filed their answers to plaintiff's second amended complaint. *See* Docket Nos. 32 and 33. PR ACDelco and Royal Motors moved for summary judgment on February 24, 2006. *See* Docket No. 67. Plaintiff opposed this motion. *See* Docket No. 76.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. *Calero–Cerezo v. U.S. Dep't of Justice,* 355 F.3d 6, 19 (1st Cir.2004).

■ The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. This burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. *Id.* at 331, 106 S.Ct. 2548. The moving party may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the non-moving party's case." *Id.* After such a showing, the "burden shifts to the nonmoving party with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548). To meet this burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *See* Fed.R.Civ.P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the nonmoving party. *Id.* If the court finds that some genuine factual issues remain, whose resolution could affect the outcome of the case, the court must deny the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Legal Analysis

Plaintiff alleges that she suffered pregnancy discrimination in violation of Title VII and Puerto Rico law. Defendants PR ACDelco and Royal Motors have moved for summary judgment on the grounds that: (1) Plaintiff has failed to establish a prima-facie case of discrimination; (2) Plaintiff cannot be treated as a Royal Motors' employee; and (3) Plaintiff's Title VII claim against Royal Motors is time-barred because Plaintiff did not exhaust all administrative remedies in a timely fashion. The court will now examine these grounds to determine whether Defendants have established that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law.

### A. Prima–Facie Case of Discrimination

#### 1. Title VII Claim

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). After the Supreme Court held that sex discrimination does not proscribe pregnancy discrimination, *General Elec. Co. v. Gilbert,* 429 U.S. 125, 145–46, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), Congress passed the Pregnancy Discrimination Act of 1978. This Act amended Title VII's definition of sex discrimination to include discrimination on the basis of childbirth, pregnancy, and related medical conditions. 42 U.S.C. § 2000e(k).

■ Like other Title VII plaintiffs, an employee claiming pregnancy discrimination may proceed under either a disparate treatment or a disparate impact theory. *Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 420 (1st Cir.1996). Here, Plaintiff alleges disparate treatment. Therefore, she has the burden of proving that Defendants dismissed her or took some adverse employment action against her because of her pregnancy. *See Id.* To prove employment discrimination under Title VII, a plaintiff may present direct or indirect evidence of discrimination. *See Geraci v. Moody–Tottrup, Int'l, Inc.,* 82 F.3d 578, 581 (3d Cir.1996). When confronted with direct evidence of discriminatory acts, "the defendant must then either deny the valid-

ity or the sufficiency of the employee's evidence, and have the jury decide whether the employee has proved discrimination by a preponderance of the evidence," *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424 (1st Cir.2000), or "prove that it would have made the same decision even if it had not taken the protected characteristic into account." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95–96 (1st Cir.1996); *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 270–78, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J. concurring). If relying on circumstantial evidence, the plaintiff must prove her case by resort to the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, "a plaintiff can establish a prima facie case of pregnancy discrimination by showing that (1) she is pregnant (or has indicated an intention to become pregnant), (2) her job performance has been satisfactory, but (3) the employer nonetheless dismissed her from her position (or took some other adverse employment action against her) while (4) continuing to have her duties performed by a comparably qualified person." *Smith*, 76 F.3d at 421.

■■■■ Establishing the prima-facie case raises a rebuttable presumption of discrimination, and "imposes upon the employer a burden to put forward a legitimate, nondiscriminatory motive for the action." *Id.* If the defendant offers such motive, the presumption of discrimination disappears, and "the plaintiff (who retains the ultimate burden of persuasion on the issue of discriminatory motive throughout) must then prove that the employer's proffered justification is a pretext for discrimination." *Id.* Once the employer offers a legitimate, nondiscriminatory reason for the adverse employment action, the court

is required to decide "whether, viewing the aggregate package of proof offered by the plaintiff," and taking all inferences in plaintiff's favor, the plaintiff has raised a genuine issue of material fact as to whether the adverse employment decision was motivated by discrimination. *Dominguez–Cruz*, 202 F.3d at 431 (quoting *Mesnick v. General Elec. Co.*, 950 F.2d 816, 824–25 (1st Cir.1991)).

Because Plaintiff's discrimination evidence in this case falls within the realm of circumstantial evidence, the court will apply the *McDonnell Douglas* burden-shifting framework. Defendants concede that Plaintiff meets the first prong of *McDonnell Douglas* (i.e., Plaintiff belonged to the protected class of pregnant women). Instead, they claim that Plaintiff cannot make a prima-facie case of discrimination because: (1) Plaintiff did not perform her job satisfactorily; (2) no adverse employment action was taken against Plaintiff; and (3) no one was hired or assigned to do Plaintiff's tasks. The court will now evaluate these claims.

### a. Plaintiff's Job Performance

■■■ Defendants claim that Plaintiff did not perform her job satisfactorily because she abandoned her duties on the same day they were assigned to her. To support this allegation, Defendants presented the sworn statement of Ginnette Pereira, a Royal Motors' employee. Ms. Pereira stated that on Plaintiff's last day of work, Mr. Montano–Valea temporarily assigned Plaintiff to do some filing work at Royal Motors. *See* Exhibit 7, ¶ 3, Docket 67. Upon initiating this filing work, Plaintiff demonstrated a negative attitude toward the job, to the point that she left for lunch and never returned to work. *Id.* at ¶ 5. Plaintiff maintains that she did not abandon her job. In her deposition, Plaintiff stated that Ms. Pereira only asked her for a letter of resignation and handed Plaintiff

a job application for Royal Motors. *See* Exhibit A, pp. 47–48, 52–53, Docket No. 76. When Plaintiff returned to PR AC-Delco to fill out the job application, she saw Mr. Montano–Valea. Yelling at Plaintiff, Mr. Montano–Valea asked her to leave and told her he did not want to see her anymore. *Id.* at 48–49. Taken this disputed fact in the light most favorable to Plaintiff, the court concludes that Plaintiff has established a genuine issue of material fact as to her job performance. Therefore, the court finds that Plaintiff has satisfied the second prong of the test for a prima-facie case of pregnancy discrimination.

### b. Adverse Employment Action

■ Defendants claim that no adverse employment action was taken against Plaintiff because she left her duties on her own free will. To support this allegation, Defendants rely again on the sworn statement of Ginnette Pereira. This statement does not establish that there is no genuine issue of material fact as to whether an adverse employment action was taken against Plaintiff because the statement is clearly contradicted by Plaintiff's deposition testimony that she was fired. Furthermore, Plaintiff offered five additional, adverse employment actions, which Defendants have failed to properly address. First, Plaintiff stated in her deposition that upon returning from her second maternity leave, she did not return to her old job as a cashier because someone else was performing her cashier duties. *See* Exhibit B, pp. 46–50, Docket No. 76. Instead, Plaintiff was only asked to do filing work. Defendants argue that Plaintiff's filing assignment upon returning from her second maternity leave was only temporary. They validate this claim by offering the sworn statements of Jesus Montano–Valea and Ginnette Pereira. *See* Appendix 6, ¶ 11 and Appendix 7, ¶¶ 3, Docket No. 67. Plaintiff's deposition testimony

contradicts the sworn statements of Montano–Valea and Pereira. Drawing all reasonable inferences in Plaintiff's favor, the court concludes that Plaintiff has established a genuine issue of material fact as to her position upon returning from her second maternity leave.

Plaintiff's remaining allegations of adverse employment actions center around the time of her second pregnancy. Plaintiff stated in her deposition testimony that: (1) former supervisor Nathaniel gave warnings to Plaintiff for being late to work while other male employees, who were similarly late, were not reprimanded (Exhibit A, pp. 35–36, Docket No. 76); (2) Betty Montano, another former supervisor, refused Plaintiff's request for an accommodation in her work schedule so that Plaintiff could attend medical appointments (*Id.* at 37, 39); (3) former supervisor Jose Somohano denied Plaintiff's request to leave early during a bleeding emergency because he did not have a cashier to replace Plaintiff (*Id.* at 43, 74); and (4) Betty Montano denied Plaintiff's request for a part-time accommodation as ordered by Plaintiff's doctor (*Id.* at 43–44).

■ Defendants argue that there is no genuine issue of material fact regarding these allegations because Plaintiff's assertions are inadmissible hearsay and because Plaintiff failed to create a nexus between the discriminatory acts she described and her alleged termination. Defendants fail on both accounts. Plaintiff's assertions are not hearsay. *See Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1094–1095 (1st Cir.1995) (holding that in employee's age discrimination suit against former employer, supervisor's statement to employee was not hearsay even though the statement was offered for its truth because the statement was an admission by a party opponent). Similarly, Plaintiff does not

need to show that the alleged discriminatory acts she suffered led to her termination. Those acts stand on their own as specific instances of an adverse employment action. Viewing the entire record and making all reasonable inferences in Plaintiff's favor, the court finds that Plaintiff has established a genuine issue of material fact as to whether an adverse employment action was taken against her. Thus, the court holds that Plaintiff has satisfied the third prong of the test for a prima-facie case of pregnancy discrimination.

### c. Replacement by a Comparably Qualified Person

Defendants claim that no one was hired or assigned to do Plaintiff's tasks. In his deposition testimony, Mr. Montano–Valea stated that Plaintiff was not substituted during her pregnancy, and that her duties were simultaneously performed by various employees. *See* Exhibit 6, ¶ 9, Docket No. 67. Upon returning from her maternity leave, Plaintiff returned to her original position, with her regular duties. *Id.* at ¶ 10. As part of those regular duties, Mr. Montano–Valea temporarily assigned Plaintiff to do some filing work. *Id.* at ¶ 11.

 These assertions are not enough to establish that there is no genuine issue of material fact as to whether Plaintiff was replaced by a comparably qualified person. First, the record on this point is less clear than Defendants would have this court believe. For example, on August 1st, 2003, Jeanette Stevens, acting as Director of Human Resources of PR ACDelco, stated in a letter of response to the charges before the ADU that the company had decided to switch Plaintiff to another area where she could develop herself more looking towards the future. *See* Exhibit E, Docket No. 76. Similarly, while Defendants claim that Plaintiff's duties were si-

multaneously performed by various employees, Mr. Montano–Valea named only one employee, Ms. Zacha L. Quinones, who performed Plaintiff's duties during her maternity leave. *See* Exhibit S, ¶ 8, Docket No. 76. Ms. Quinones was not pregnant. Second, even if the court ignores these inconsistencies, and accepts Montano–Valea's assertion that Plaintiff was not substituted and that she returned to her original position, that assertion is clearly contradicted by Plaintiff's evidence. In her ADU discrimination charge, Plaintiff stated that upon returning from her second maternity leave, she did not return to her old job as a cashier because someone else was performing her cashier duties. *See* Appendix 11, Docket No. 67. Accordingly, the court concludes that Plaintiff has established that a genuine issue of material fact exists as to whether she was replaced by a comparatively qualified person. Therefore, the court finds that Plaintiff has satisfied the fourth prong of the test for a prima-facie case of pregnancy discrimination.

Given that Defendants conceded prong one of the test for a prima-facie case, and given the court's determination that Plaintiff has satisfied prongs two, three and four, the court holds that Plaintiff has established a prima-facie case of pregnancy discrimination.

### d. Legitimate, Non-discriminatory Reason

 Establishing a prima-facie case raises a rebuttable presumption of discrimination, and "imposes upon the employer a burden to put forward a legitimate, nondiscriminatory motive for the action." *Smith,* 76 F.3d at 421. To meet this burden, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant." *Texas Dep't of Community*

*Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant meets this burden of production, then the presumption of discrimination is rebutted. *Id.*

■ Defendants in this case attempt to meet their burden of production by alleging that Plaintiff was not replaced and that she abandoned her work. Because these proffered reasons are contradicted by Plaintiff's deposition testimony that she was replaced and then terminated, the court finds that Defendants have not met their burden of putting forward a legitimate, nondiscriminatory motive for the alleged replacement and termination. Furthermore, Defendants have failed to offer a legitimate, nondiscriminatory reason for the other adverse employment actions Plaintiff alleges. Accordingly, the court concludes that Defendants have not rebutted the presumption of discrimination raised by the Plaintiff's prima-facie case. Because of this failure to rebut, the court holds that there is a genuine issue of material fact as to Plaintiff's Title VII claim of pregnancy discrimination.

### 2. Claims Arising Under Puerto Rico Law

Plaintiff has alleged violations of Puerto Rico laws arising out of the same nucleus of facts giving rise to her federal claim. Namely, Plaintiff claims that Defendants violated Puerto Rico Law No. 3, P.R. Laws Ann. tit. 23 § 467 et seq. ("Law 3"); Puerto Rico Law No. 69, P.R. Laws Ann. tit. 29 § 1321 et seq. ("Law 69"); Puerto Rico Law No. 100, P.R. Laws Ann. tit. 29 § 146 et seq. ("Law 100"); Puerto Rico Law 80, P.R. Laws Ann. tit. 29 § 185 et seq. ("Law 80"); and Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31 § 5141. *See* Docket No. 24. Defendants PR ACDelco and Royal Motors have moved for summary judgment on these

claims on the ground that Plaintiff has failed to establish a prima facie case of discrimination under Puerto Rico law. The court will now examine whether Defendants have established that there is no genuine issue of material fact and that they are entitled to a judgment as a matter of law.

#### a. Law Nos. 3 and 69

■ Law 3 is the Commonwealth's Maternity Leave Act. It prohibits an employer from terminating a pregnant woman without just cause. P.R. Laws Ann. tit. 29 § 469. Law 69 is the Commonwealth's Sex Discrimination Statute. It forbids discrimination in employment on the basis of sex. P.R. Laws Ann. tit. 29 § 1321 et seq. Courts analyze discrimination claims under Law Nos. 3 and 69 like a Title VII discrimination cause of action. *Mejias Miranda v. BBII Acquisition Corp.,* 120 F.Supp.2d 157, 174 (D.P.R.2000). Having found that a genuine issue of facts exists as to Plaintiff's Title VII claim for pregnancy discrimination, the court holds likewise that a genuine issue of material fact exists as to the alleged violations of Puerto Rico Law Nos. 3 and 69. *See Id.* at 174–75 (denying defendant's motion for summary judgment of Law Nos. 3 and 69 claims because a genuine issue of fact exists as to plaintiff's claim for pregnancy discrimination under Title VII).

#### b. Law No. 100

■ Law 100 is the Commonwealth's Employment Discrimination Law. It prohibits discrimination by any employer on the basis of gender. P.R. Laws Ann. tit. 29 § 146. Under Law 100, plaintiff bears the initial burden of establishing: (1) that she suffered an adverse employment action; (2) that the adverse employment action was not justified; and (3) some basic fact substantiating the type of discrimination alleged. *Hoyos v. Telecorp Commu-*

*nications, Inc.,* 405 F.Supp.2d 199, 206 (D.P.R.2005). Once the plaintiff establishes this prima-facie case, a rebuttable presumption of discrimination arises. *Mejias Miranda,* 120 F.Supp.2d at 173. To rebut this presumption, "the employer must prove, by a preponderance of the evidence, that the challenged transaction was not motivated by discriminatory animus." *Hoyos,* 405 F.Supp.2d at 206 (quoting *Morales v. Nationwide Ins. Co.,* 237 F.Supp.2d 147, 153 (D.P.R.2002)). If the employer rebuts the presumption, then the employee has the burden of proving the existence of discrimination. *Id.*

 Law 100 does not define what constitutes "just cause." To fill this gap, Puerto Rico courts have adopted the guidelines for justifiable dismissals under Law 80. *See Baez Garcia v. Cooper Labs., Inc.,* 120 D.P.R. 145, 155 (1987). A dismissal without just cause includes "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment." P.R. Laws Ann. tit. § 185b.

 Plaintiff in this case has made a prima-facie case under Law 100. She presented evidence that upon returning from her second maternity leave, she did not return to her old job as a cashier because someone else was performing her cashier duties. *See* Appendix 11, Docket No. 67. Instead, she was asked for a resignation letter and told to leave, for no apparent reason. *See* Exhibit A, pp. 47–49, 52–53, Docket No. 76. Because Plaintiff made her prima-facie case, Defendants must now "prove, by a preponderance of the evidence, that the challenged action was not motivated by discriminatory animus." *Morales,* 237 F.Supp.2d at 153. To meet this burden, Defendants alleged that Plaintiff was not replaced and that she abandoned her job. *See* Exhibit 6, ¶¶ 9, 14, Docket 67. Because this account of events

is clearly contradicted by Plaintiff's evidence that she was replaced and then fired, the court finds that Defendants have failed to carry the burden of persuasion that the alleged adverse employment actions were not motivated by discriminatory animus. Because Defendants did not rebut Plaintiff's prima-facie case, the court holds that there is a genuine issue of material fact as to Plaintiff's discrimination claim under Law 100.

### c. Law No. 80

 Law 80 is the Commonwealth's Wrongful Dismissal Act. It provides relief to employees who are terminated "without good cause." P.R. Laws Ann. tit. 29 § 185a. Under Law 80, an employee bears the initial burden of alleging unjustified dismissal and proving actual dismissal. *Hoyos,* 405 F.Supp.2d 199 at 205–06 (citing *Alvarez–Fonseca v. Pepsi Cola of P.R.,* 152 F.3d 17, 28 (1st Cir.1998)). Once the employee meets this burden, "the employer must establish by a preponderance of the evidence that the discharge was made for good cause." *Id.* A dismissal without just cause includes "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment." P.R. Laws Ann. tit. 29 § 185b.

Plaintiff in this case met her initial burden under Law 80. In her deposition, Plaintiff stated that upon returning from her second maternity leave, she was asked for a resignation letter and told to leave, for no apparent reason. *See* Exhibit A, pp. 47–49, 52–53, Docket No. 76. Defendants failed to rebut Plaintiff's initial burden because their allegation that Plaintiff abandoned her job · is contradicted by Plaintiff's deposition. Accordingly, the court holds that there is a genuine issue of material fact as to Plaintiff's discrimination claim under Law 80.

#### d. Article 1802

■■■ Article 1802 is the Commonwealth's tort statute. It provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31 § 5141. Employment discrimination claims can give rise to a cause of action under Article 1802. *Hoyos*, 405 F.Supp.2d at 209. Because Plaintiff's employment discrimination claims under Puerto Rico law survive summary judgment, the court upholds Plaintiff's Article 1802 claim. *See Adams v. Corporate Realty Services, Inc.*, 190 F.Supp.2d 272, 279 (D.P.R.2002) (refusing to dismiss Article 1802 claim because Plaintiff's claim under Law 100 survived summary judgment).

### B. Identity of Plaintiff's Employer

■■■ Defendant Royal Motors argues that it is not a proper co-defendant in this case because Plaintiff cannot be treated as a Royal Motors' employee. Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). This definition "is completely circular and explains nothing," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992). In *Darden*, the Supreme Court held that the common law agency test applies to identify employees under ERISA, which, like Title VII, defines an employee as "any individual employed by an employer." *Id.* Relying on *Darden*, the First Circuit has adopted the common law agency test to determine whether an individual is an employee under Title VII. *Alberty–Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1, 6 (1st Cir.2004). Under the common law agency test, a court must consider:

"the hiring party's right to control the manner and means by which the product is accomplished. Among other factors relevant to this inquiry are the skills required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

*Darden*, 503 U.S. at 323–24, 112 S.Ct. 1344. In most cases, "the extent to which the hiring party controls the manner and means by which the worker completes her tasks will be the most important factor in the analysis." *Alberty–Velez*, 361 F.3d at 7.

■■■ The question of whether an individual is an employee presents a mixed issue of fact and law. *Lilley v. BTM Corp.*, 958 F.2d 746, 750, n. 1 (6th Cir. 1992). If there are no disputed issues of material fact concerning employment status, the court may decide whether an individual is an employee as a matter of law "if the factors point so favorably in one direction that a fact finder could not reasonably reach the opposite conclusion." *Alberty–Velez*, 361 F.3d at 7. However, "if there is a genuine dispute as to whether an employer-employee relationship exists ... the issue is a matter for the jury." *Martin v. United Way of Erie County*, 829 F.2d 445, 451 (3d Cir.1987).

■■■ To support her claim that she was a Royal Motors' employee under Title VII, Plaintiff presented the following evidence. In her deposition, Plaintiff stated that Betty Montano, a Royal Motors' employee, was the person with authority to award

days off, or part-time changes with regard to Plaintiff. *See* Exhibit A, p. 44, Docket No. 76. Plaintiff also alleged that she was assigned the responsibility of the closing and accounting not only of PR ACDelco's daily profits, but also of Royal Motors' daily profits. *Id.* at 69. Additionally, Ginnette Pereira, a Royal Motors' employee, was the person who received instructions from Jesus Montano–Valea to tell Plaintiff what she was to do on her second day of work upon returning from maternity leave. *See* Appendix 7, Docket No. 67. These alleged duties were to be performed at an office in Royal Motors. *See* Exhibit B, p. 150, Docket No. 76. Plaintiff also stated in her deposition that she would often substitute for Royal Motors' employees. *See* Exhibit A, p. 86, Docket No. 76. In sum, Plaintiff presented evidence that her work included handling Royal Motors' business, at Royal Motors, under the direction of Royal Motors' employees, who also decided when Plaintiff could take time off. This evidence shows that Royal Motors controlled the manner and means by which Plaintiff completed her tasks,. the most important factor in determining whether an individual is an employee. *See Alberty–Velez*, 361 F.3d at 7. It also establishes that Royal Motors had the right to assign additional projects to Plaintiff and that Royal Motors had discretion over when and how long Plaintiff could work.

Plaintiff also presented documentary evidence that her life insurance policy and medical insurance plan are run through Royal Motors' policy. *See* Exhibits H, I, and J, Docket No. 76. These documents show that Royal Motors provided employee benefits to Plaintiff. Because Plaintiff's evidence is undisputed and because it points "so favorably in one direction that a fact finder could not reasonably reach the opposite conclusion," the court finds as a matter of law that Plaintiff was a Royal Motors' employee under Title VII. *Alberty–Velez*, 361 F.3d at 7.

[ ] Likewise, the court finds as a matter of law that Plaintiff was a Royal Motors' employee under Puerto Rico anti-discrimination laws. To determine whether an employee/employer relationship exists, Puerto Rico courts consider the following factors: (1) the hiring party's degree of control in the execution of work; (2) the employee's degree of initiative and judgment; (3) ownership of equipment; (4) the hiring party's right to employ and terminate; (5) benefits opportunity and loss assumption; (6) manner of compensation; and (7) retention of taxes. *Hernandez v. Trans Oceanic Life*, 151 D.P.R. 754, 768 (2000). Plaintiff's evidence that she handled Royal Motors' business, at Royal Motors, under the direction of Royal Motors' employees, who also decided when Plaintiff could take time off, shows that Royal Motors exercised control over Plaintiff's work. *See* Exhibit A, pp. 44, 67, 69, 86 and Exhibit B, p. 150, Docket No. 76; Appendix 7, Docket No. 67. Similarly, Plaintiff's documentary evidence that her life insurance policy and medical insurance plan are run through Royal Motors' policy show that Royal Motors provided employee benefits to Plaintiff. *See* Exhibits H, I, and J, Docket No. 76. Because Plaintiff's evidence is undisputed and because it points "so favorably in one direction that a fact finder could not reasonably reach the opposite conclusion," the court finds as a matter of law that Plaintiff was a Royal Motors' employee under Puerto Rico anti-discrimination laws. *Alberty–Velez*, 361 F.3d at 7.

C. Exhaustion of Administrative Remedies

[ ] Defendant Royal Motors argues that Plaintiff's Title VII claim against Roy-

al Motors is time-barred because Plaintiff did not exhaust all administrative remedies in a timely fashion. To bring a Title VII claim in federal court, a plaintiff must file a timely charge with the EEOC. *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 278 (1st Cir.1999). To be timely, the charge must be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred" or within 300 days if "the person aggrieved has initially instituted proceedings with [a] State or local agency." 42 U.S.C. § 2000e–5(e). Additionally, Title VII provides that a civil action may only be brought in federal court against "the respondent named in the charge." 42. U.S.C. § 2000e–5(f)(1). The purpose of this requirement is to provide notice to the charged party and to permit the EEOC to attempt voluntary conciliation. See *Causey v. Balog,* 162 F.3d 795, 800 (4th Cir.1998) (citing *Alvarado v. Board of Trustees of Montgomery Cmty. Coll.,* 848 F.2d 457, 460 (4th Cir. 1988)).

In this case, Plaintiff filed a charge of discrimination with the ADU on June 14, 2002. *See* Appendix 11, Docket No. 67. This charge was cross-filed with the EEOC. In her ADU administrative charge, Plaintiff wrote "AC Delco" in the blank provided for "employer." *Id.* Royal Motors asks the court to find Plaintiff's Title VII claim against it time-barred because more than 300 days have passed since Plaintiff was allegedly terminated on August 28, 2001 and because Plaintiff did not identify Royal Motors as her employer in her ADU discrimination charge.

] Plaintiff in this case exhausted all administrative remedies against Royal Motors in a timely fashion. As a general matter, administrative complaints before the EEOC are to be construed liberally to further the underlying purposes of Title VII and because such complaints tend to be drafted by those unschooled in technical pleading. *See Love v. Pullman,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) ( [T]echnicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process.) Here, Plaintiff only had a high-school education. *See* Appendix 3, Docket No. 67. She filled out the ADU administration charge without the assistance of counsel. In the narrative section of the charge, she specifically mentioned Royal Motors, as well as Royal Motors' allegedly discriminatory acts against her. *See* Appendix 11, Docket No. 67. For these reasons, the court finds that Royal Motors was named in the administrative charge. *See Maldonado–Cordero v. AT & T,* 73 F.Supp.2d 177, 186 (D.P.R.1999) ("naming a party in the narrative section of the charge, even if omitted in the caption, is sufficient to satisfy the charging requirement in 42 U.S.C. § 2000e–5(f)(1) where the discrimination the party is alleged to have engaged in is described with particularity"). Because Royal Motors was named in the administrative charge, the court finds that Plaintiff's Title VII claim against Royal Motors is not time-barred.

## IV. Conclusion

For the foregoing reasons, Defendants PR ACDelco and Royal Motors' motion for summary judgment (Docket No. 67) is **DENIED.**

**SO ORDERED.**

### *ORDER*

In light of the Court's opinion and order (Docket No. 103) denying defendants' summary judgment motion, the parties hereby ordered to file a **JOINT**, proposed pretrial order, on or before **February 15, 2007.** A

pretrial/settlement conference date shall be set subsequently.

**SO ORDERED.**