Carlos M. Fonnegra **TAMAYO,** et al., Plaintiffs

v.

**BANCO SANTANDER PUERTO RICO, Defendant.**

**Civil No. 03–2243 (FAB).**

United States District Court, D. Puerto Rico.

March 9, 2007.

Order Denying Reconsideration April 4, 2007.

---

Godwin Aldarondo–Girald, Aldarondo Girald Law Office, San Juan, PR, for Plaintiffs.

Pedro J. Manzano–Yates, Enrique R. Padro, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant.

## OPINION AND ORDER

BESOSA, District Judge.

On November 21, 2003, Carlos M. Fonnegra Tamayo ("Fonnegra"), and his wife Adriana M. Escobar Velez ("Ms. Escobar"), filed suit against Banco Santander Puerto Rico ("BSPR" or "the Bank") alleging employment discrimination due to national origin under Title VII, 42 U.S.C. §§ 2000e–2000e–15, as well as supplemental state law claims (Docket No. 1). On March 7, 2005, BSPR moved for summary judgment on plaintiffs' claims (Docket No.

39). On August 31, 2005, plaintiffs opposed the motion (Docket No. 63). For the reasons discussed below, the Court **DENIES** the Bank's motion for summary judgment.

## FACTUAL BACKGROUND

Fonnegra was born in Medellin, Colombia. (Statement of Uncontested Facts ("SUF"), Docket No. 39, Document 3, ¶ 1). He began to work for the Santander Group in Colombia on April 11, 1998 as Manager of Santander Investment Stock Operations. (SUF ¶ 2). In 2000, Fonnegra became the Manager of Human Resources Planning for the Santander Group in Colombia. (*Id.*). In 2002, Fonnegra was named Vice–President of Operations and Processes. (*Id.*). It was during this time that Fonnegra met and developed a professional relationship with Monica Aparicio ("Aparicio"), who at the time was the President of the Santander Group in Colombia. (SUF ¶ 3). Aparicio put Fonnegra in charge of redesigning the Operations and Processes area of the Santander Group in Colombia and of optimizing a pension fund company recently acquired by the organization. (*Id.*).

In 2002, Aparicio was transferred to Puerto Rico to occupy the position of President of BSPR. (SUF ¶ 5). In May 2002, Aparicio approached Fonnegra to discuss the possibility that he would transfer to BSPR to help her reorganize Santander Group's operations in Puerto Rico. (SUF ¶ 6). Aparicio told Fonnegra that one of the conditions of his employment with Banco Santander de Puerto Rico would be that the assignment would be for a term of three years. Counter Statement of Facts ("CSF"), Docket No. 63, Document 2, ¶¶ 14, 15. Jose Manuel Rostro ("Rostro"), the executive in charge of Human Resources for Banco Santander in Latin America, ratified Aparicio's offer to Fonne-

gra. (*Id.*) Fonnegra accepted the offer, and on September 9, 2002, he was transferred to BSPR with an annual salary of $130,000. (SUF ¶ 7). Fonnegra did not execute a written contract with BSPR. (*Id.*).

Aparicio created a position within BSPR's structure, Special Projects Organizations Director, in order to accommodate Fonnegra. (SUF ¶ 8). To create the position, Aparicio reorganized an area which had been supervised exclusively by Maria Calero ("Calero"). (SUF ¶ 9). Fonnegra reported directly to Calero, but supervised three areas previously under her supervision. (*Id.*). On Fonnegra's very first day at work, June 24, 2002, Ivonna Pacheco ("Pacheco"), BSPR's Vice–President for Human Resources, told him that the problem with the bank was the foreign employees, because people didn't like them and because they were "too expensive". (CSF ¶ 33).

Less than two months later, at a meeting of BSPR's Board of Directors held on August 15, 2002, there was a discussion regarding the "problem" with foreign employees. (CSF ¶¶ 42–49). One board member, Mr. Richard Reiss ("Reiss"), mentioned that a lot of discontent had been created among BSPR's employees due to the significant number of foreign employees hired to fill vacancies at the Bank at salaries higher than those offered to local employees. (CSF ¶ 42). Mr. Reiss opined that the prior administration did not trust local talent and had brought in foreign employees, a practice which had had disastrous results. (CSF ¶ 45). Mr. Reiss also requested a list of all foreign employees with their positions and salaries. (CSF ¶ 45). Mr. Reiss further stated that the bank had to go back to what it used to be. (CSF ¶ 46). Another board member, Mr. Benito Cantalapiedra, suggested that to create trust within the em-

ployees, local employees should be informed that in the future they would have the opportunity for advancement and would be able to hold the positions then held by foreign employees. (CSF ¶ 47).

Aparicio was terminated from her position as President of BSPR in October 2002, and Jose Ramon Gonzalez ("Gonzalez") took over as BSPR's President. (SUF ¶¶ 12, 13). Gonzalez stated that he wanted Fonnegra out of the bank by December 2002. (CSF ¶ 54). Soon after Mr. Gonzalez's decision, Ms. Calero and Ms. Pacheco decided to eliminate Fonnegra's position, which they deemed unnecessary. (SUF ¶¶ 14, 15). After finding no other position within BSPR commensurate with Fonnegra's experience and salary level, he was terminated on November 8, 2002. (SUF ¶ 16).

## DISCUSSION

### A. *Summary Judgment Standard*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Ca-*

*trett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

To assess whether to grant or deny a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation."

*Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

## B. *Title VII Claims*

 Title VII makes it an unlawful employment practice for an employer to discriminate against any individual based on the individual's national origin. *See* 42 U.S.C. § 2000e–2(a)(1). Under Title VII, a discrimination case can be established in one of two ways: first, through direct evidence of discrimination, and second, through the cumulative effect of indirect evidence of the employer's motivation. *See Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 909 (1st Cir.1988). When the plaintiff is able to produce direct evidence of discrimination, the Court applies the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). Under this framework, "plaintiff's burden is tempered so that [he or] she need prove only that the discriminatory action was a *motivating factor* in an adverse employment decision." *Patten v. Wal–Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir.2002)(emphasis in the original). "[P]laintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.' ... Direct evidence of discrimination is *not required* in mixed-motive cases." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–102, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003)(emphasis added). "[E]vidence is 'direct' ... when it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir.2000).

 Once the plaintiff establishes that the employment decision was motivated by a discriminatory animus, even if only in part, "the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff." *Desert. Palace*, 539 U.S. at 94, 123 S.Ct. 2148. "In order to avail itself of the affirmative defense, the employer must 'demonstrate that [it] would have taken the same action in the absence of the impermissible motivating factor.' " *Id.* at 94–95, 123 S.Ct. 2148 (*quoting* 42 U.S.C. § 2000e–5(g)(2)(B)).

> [A] plaintiff bringing an employment discrimination claim may succeed in resisting a motion for summary judgment where the evidence, direct or circumstantial, establishes a genuine issue of fact regarding an unlawful motivation for the adverse employment action (i.e., a motivation based upon a protected characteristic), even though the plaintiff may not be able to create genuine doubt as to the truthfulness of a different, yet lawful, motivation

*Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1018 (8th Cir.2005).

 In its motion, BSPR argues that under the *McDonnell Douglas*[1] burden-shifting framework, plaintiffs' Title VII claims must be dismissed because Fonnegra is unable to establish a *prima facie* case of discrimination and that, even assuming that he could establish it, he cannot demonstrate that BSPR's proffered non-discriminatory reason for terminating his employment is a mere pretext for discrimination. BSPR's use of the *McDonnell Douglas* framework, however, is inappropriate because it "is inapplicable when the plaintiff can prove discrimination by *direct* evidence." *Lipsett*, 864 F.2d at 899 (emphasis in the original). Instead, it is the

---

**1.** *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

mixed-motive framework that must be applied to the facts of this case.

■ Fonnegra has proffered sufficient direct evidence for a reasonable juror to find that a discriminatory animus was the motivation for the termination of his employment. First, there is Ms. Pacheco's comment, made on Fonnegra's very first day of work, about foreigners being the root of BSPR's problems. Ms. Pacheco took part in the decisions to terminate Fonnegra and to eliminate his position. Then there is the discussion at BSPR's Board of Directors' meeting concerning what was considered to be the "problem" created by the recruitment of foreign employees. The board members sensed that discontent existed among the Bank's employees because of the increasing number of foreign employees being brought in to fill top-level positions at the Bank at salaries higher than those offered to local employees. It was suggested at the board meeting that local employees be appeased by letting them know that in the future they would be able to hold those higher positions then being held by foreign employees. These comments can easily be understood to imply that foreign employees would be removed from BSPR because they are foreign so that local employees could have the opportunity to move up the ranks. From those comments by the Members of the Board of Directors, a reasonable juror could discern, at a minimum, a discriminatory animus against foreign employees throughout the Bank.[2]

Even though it does not discuss the mixed-motive framework in its motion, BSPR's proffered non-discriminatory reason may very well be used under this standard as well. BSPR argues that Fonnegra was terminated because his position had been specifically created for him, and that once Aparicio left BSPR, Ms. Calero and Ms. Pacheco decided that the position was no longer necessary. Furthermore, it claims that there were no other positions within BSPR's structure to which Fonnegra could be transferred. As discussed above, however, even if a jury were to believe that BSPR would have terminated Fonnegra without a discriminatory animus, if it finds that discrimination played any part in the decision, BSPR could still be liable under the mixed-motive framework.

Therefore, BSPR's motion must be denied as to plaintiffs' Title VII claims.

## C. Breach of Contract Claims

■ BSPR also argues that plaintiffs' breach of contract claims should be dismissed because the Bank's employee manual, which is incorporated into the employment contract, states that international assignments can be terminated at the Bank's will, depending on its needs.

The Court, however, does not agree with BSPR's reading of the employee manual. The section of the employee manual to which BSPR refers merely provides that if the Bank were to terminate an international assignment due to its needs or because of poor performance by the employee, it would be obligated to provide the employee with airplane tickets for him and his family, as well as the costs of moving their personal belongings back to their country of origin. The manual does not expressly authorize BSPR to terminate an international assignment before its term expires.

Although BSPR denies that Fonnegra's employment had a specific term, the Court finds that the record contains sufficient evidence to justify Fonnegra's expectations

---

**2.** Some persons may even think that these comments are proof of rank discrimination against foreign employees at all levels of the Bank, from the members of its Board of Directors on down.

that he would remain in BSPR for a term of at least three years. The evidence on record shows that the three-year term was part of the employment offer and it is clear that Fonnegra relied on that representation when he accepted the transfer.[3] There is also evidence that BSPR agreed to pay for Fonnegra's housing for a term of three years and that on Fonnegra's visa application, BSPR indicated that his employment would be for a term of three years (Docket No. 63, Exh. VII). A certification issued by BSPR also indicates that his employment would be for three years (Docket No. 63, Exh. VIII). With this evidence, a reasonable juror could find that a contract for a three-year term in fact existed between BSPR and Fonnegra and that BSPR breached that contract. BSPR's motion is denied as to the breach of contract claims.

### D. *Law 100 Claims*

■■■ Law 100 is Puerto Rico's Employment Discrimination Law. P.R. Laws Ann. tit. 29 § 146. Under Law 100, plaintiff bears the initial burden of establishing: (1) that he suffered an adverse employment action; (2) that the adverse employment action was not justified; and (3) some basic fact substantiating the type of discrimination alleged. *Hoyos v. Telecorp Communications, Inc.,* 405 F.Supp.2d 199, 206 (D.P.R.2005). Once the plaintiff establishes this *prima-facie* case, a rebuttable presumption of discrimination arises. *Mejias Miranda v. BBII Acquisition Corp.,* 120 F.Supp.2d 157, 173 (D.P.R.2000). To rebut this presumption, "the employer must prove, by a preponderance of the evidence, that the challenged transaction was not motivated by discriminatory animus." *Hoyos,* 405 F.Supp.2d at 206 (*quot-*

*ing Morales v. Nationwide Ins. Co.,* 237 F.Supp.2d 147, 153 (D.P.R.2002)). If the employer rebuts the presumption, then the employee has the burden of proving the existence of discrimination. *Id.*

■■■ With the evidence that Fonnegra has presented to show that a discriminatory animus motivated his dismissal, the Court finds that Fonnegra may establish a case under Law 100. He can meet his initial burden because (1) he was terminated; (2) without justification; and (3) he has proffered evidence that the dismissal was due to an improper motive (discrimination based on national origin.) BSPR may attempt to rebut the presumption raised by arguing that it terminated Fonnegra because his position was eliminated and the Bank could find no other position within its structure to accommodate him at the salary he was receiving. As discussed above, however, Fonnegra has proffered sufficient evidence that he was terminated due to his national origin to survive summary judgment. Accordingly, summary judgment is denied as to Law 100 claims.

### E. *Law 80 Claims*

■■■ Law 80 is Puerto Rico's Wrongful Dismissal Act. It provides relief to employees who are terminated "without good cause" as defined in the Act. P.R. Laws Ann. tit. 29 § 185a. Under Law 80, an employee bears the initial burden of alleging unjustified dismissal and must prove by a preponderance of the evidence that he was actually or constructively discharged. *Hoyos v. Telecorp Communications, Inc.,* 405 F.Supp.2d 199, 205–206 (D.P.R.2005)(*citing Alvarez–Fonseca v. Pepsi Cola of P.R.,* 152 F.3d 17, 28 (1st Cir.1998)). Once the employee meets this burden, "the employer must establish by a

---

3. The only objection to three-year term is in an email from Ms. Pacheco (Docket No. 39, Exh. II). There is no indication, however, that Fonnegra received that email or was informed in any way that there was no specific term for his employment.

preponderance of the evidence that the discharge was made for good cause." *Id.* "The statute allows dismissals for a number of reasons, including an employee's improper or disorderly conduct, negligent attitude towards his work, and violations of the employer's rules and regulations." *Alvarez–Fonseca,* 152 F.3d at 28 (1st Cir. 1998). However, "[a] discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause." P.R. Laws Ann. tit. 29 § 185b.

■ Fonnegra has met his burden under Law 80. He has alleged that his termination was unjustified; there is no dispute that he was in fact terminated. To rebut the presumption of unjustified dismissal, BSPR argues that it had just cause to terminate Fonnegra because of a "reorganization"[4] of its president's work team. Because there is evidence of a discriminatory animus in this case, however, whether or not BSPR's proffered justification for Fonnegra's dismissal is sufficient to defeat the presumption becomes a question of credibility which must be presented to the jury and cannot be decided at the summary judgment stage. The motion for summary judgment is denied as to Fonnegra's Law 80 claims.

### F. *Damages under Article 1802*

Article 1802 is Puerto Rico's General Tort Statute. *See* P.R. Laws Ann. tit 31 § 5141. BSPR argues that Ms. Escobar's claims under Article 1802 must be dismissed, under the presumption that Fonnegra's claims lack merit. Because the Court has found, however, that Fonnegra's claims can survive summary judgment and will be decided by a jury, Ms. Escobar's tort claims can also proceed before the

jury. Accordingly, the motion for summary judgment is also denied as to Ms. Escobar's tort claims.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** BSPR's motion for summary judgment.

**IT IS SO ORDERED.**

### ORDER

Defendant's Rule 59(e) motion to alter or amend the Opinion and Order of March 9, 2007 (Docket No. 95) is hereby **DENIED.**

■ Pursuant to Fed.R.Civ.P. 59(e), a party may move the Court "to amend its judgment based on newly discovered material evidence or because the Court committed a manifest error of law or fact." *Colon v. Fraticelli,* 181 F.Supp.2d 48, 50 (D.P.R. 2002) (*citing Aybar v. Crispin–Reyes,* 118 F.3d 10, 16 (1st Cir.1997)). Rule 59(e), however, is "aimed at reconsideration, [and] not initial consideration," and thus is not a proper mechanism to advance arguments that should have been presented before judgment was entered, but were not. *See Jorge Rivera Surillo & Co., Inc. v. Falconer Glass Indus., Inc.* 37 F.3d 25, 29 (1st Cir.1994) (*citing F.D.I.C. v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir.1992)); *see also Aybar,* 118 F.3d at 16.

Defendant's main argument for reconsideration is that the Court erred in denying its motion for summary judgment after finding that the plaintiff had presented direct evidence of discrimination in support of his discrimination claim. Defendant insisted in its motion for summary judgment, and now reiterates on reconsideration, that the plaintiff only proffered

---

**4.** It is difficult to envision the acts taken by BSPR as a "reorganization" when the only person affected, as far as the record shows, was Fonnegra.

indirect evidence of discrimination, which mandates the application of the *McDonnell Douglas*[1] burden-shifting framework. Under this framework, defendant argues that plaintiff's claims must be dismissed because he cannot establish a *prima facie* case of discrimination.

The Court stands by its prior finding, that the plaintiff has proffered sufficient direct evidence of discrimination to survive summary judgment and have his claims decided by a jury. Contrary to defendant's contention, the evidence does constitute direct evidence of discrimination. The minutes of the Board Meeting clearly show that at the highest levels of the bank the decision was made to get rid of all foreigners. Even if Fonnegra's name was not specifically mentioned in the meeting, it is rather pellucid that he was one of those being targeted for elimination. These were not mere stray remarks by non-decision-makers, as defendant would categorize them. This is evidence of the bank's ultimate decision-maker consciously and deliberately engaging in a course of action that would lead to the termination of all foreigners, Fonnegra among them, for no other reason than because they are foreigners. Evidence of discrimination rarely comes clearer than that.

Therefore, because there is direct evidence of discrimination, the application of the *McDonnell Douglas* burden-shifting framework is inappropriate and it becomes immaterial whether or not Fonnegra can establish a *prima facie* case of discrimination.

**IT IS SO ORDERED.**

---

1. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).